MORRISTOWN TRUST COMPANY

*v.*

ELLA F. CAPSTICK et al.

[Decided February 28th, 1919.]

Where a fund was deposited in a bank of discount in the name of A *or* B, in an active account, checks being drawn thereon by both parties, the parties are not joint tenants of the fund, and the fund does not therefore pass to the survivor on the death of one of the parties.

---

On bill, &c.

*Mr. Alfred Elmer Mills,* for the complainant.

*Mr. Elmer King,* for Mrs. Capstick.

*Mr. John A. Bernhard,* for Elizabeth Safford and others.

STEVENS, V. C.

This is an interpleader bill filed by one of the executors of the will of the late John H. Capstick. Mr. Capstick died in March, 1918. He left him surviving his widow, Ella F. Capstick, one of the claimants, and certain nieces and a nephew, his residuary legatees, who are the other claimants. At the time of his death there was on deposit in the complainant trust company the sum of $18,151.34. It stood in the name of "John H. Capstick *or*

Ella F. Capstick." There was also on deposit in the Boonton National Bank the sum of $10,333.21, which likewise stood in the name of "John H. Capstick *or* Ella F. Capstick." These deposits were such as are made in banks of discount and deposit and not in savings banks. In this respect the case differs from any that has heretofore engaged the attention of this court.

The widow's contention is that she and her husband were joint tenants of the two funds and that she takes by survivorship. The other defendants contend that the form of the deposit, read in the light of the evidence, shows an intention on Mr. Capstick's part to make a provision for his wife that was in reality testamentary and that failed of accomplishment under the rule laid down by the court of errors and appeals in *Stevenson* v. *Earl, 65 N. J. Eq. 721.*

Mr. Capstick was a member of congress at the time of his death and a gentleman of considerable means. Prior to March 4th, 1901, he had an account in complainant company's bank, which stood in his own name. On that day, upon his written order, it was changed to read, as already stated, "John H. Capstick *or* Ella F. Capstick" and remained thus changed, up to the time of his death. The account was an active one, covering thirty-nine sheets of the bank ledger. Mrs. Capstick drew checks of her own upon this account, but not, as I infer from the evidence, very frequently. The Boonton account was opened in the same form on July 13th, 1916. This, too, was an active account and Mrs. Capstick drew, in all, two checks upon it. The money deposited by Mr. Capstick was all his own money.

There cannot be the least doubt as to his purpose. In a private memorandum book containing a list of securities held by him and his wife he wrote: "My bank accounts are jointly held by my wife and self. Either can draw upon the accounts." In conversation with a friend, Mr. Potts, about the year 1912, at his (Mr. Capstick's) home, he asked him whether he had a joint account with his wife and Mr. Potts answering no, he said:

"it was a nice thing to have; that I should have an account from which my wife could draw, and he said if anything happened to him or to me that there would be money there which she could use to tide over until such time as the estate was settled up, * * * and I recall one time he told her * * * that there was a joint account (the Morristown Trust Company account) that she could draw on for the full amount any time she wanted it, when he gave her the book."

Exactly what the witness means by the words "when he gave her the book" is not clear, for the account had been opened in the two names eleven or twelve years before and the account being an ordinary one, delivery of the pass book was unnecessary, as her check would suffice. The witness is probably referring, inaccurately, to the changing of the account to the two names.

Mrs. Potts' version of the conversation is as follows: Mr. Capstick said:

"Clyde [Mr. Potts], have you a joint account with Jane [Mrs. Potts], and Mr. Potts said 'No;' and he said well you ought to nave; it is a good thing. Mr. Capstick was a little inclined to profanity, and when he talked about his joint account, he said that he came home to his wife one night and he said: 'Dearie, I have opened a joint account in the Morristown Trust Company with you and you may draw on it to the full amount, but if you do, I will give you hell.' I remember that because of the remark."

The witness testified further that he told her husband, that he had opened the account because he might die any time

"and a woman who was left alone in the world with an estate to settle up was in a bad way; he opened this account with Mrs. Capstick that she might use it; if he died she could use this money to settle up things while waiting for the estate to be closed."

From this evidence a twofold purpose is evident. First, he wanted to give his wife the power, occasionally, to draw upon moneys which he was depositing; and secondly—and this was his main object—he wanted to make provision for her pending the settlement of his estate.

In *Stevenson* v. *Earl, 65 N. J. Eq. 721,* one Earl made application to become a depositor in the Savings Fund of the Pennsylvania railroad. One of the rules of the company required

a statement of the name and residence of the person to whom, in the event of death, his deposits should be paid. He stated to the company that in that event, all deposits standing to his credit should be paid to his wife and the account was opened accordingly. He gave his wife the pass book, stating to her that here was the money and that if he died, it should go to her; and that she could get it in ten days by giving notice. Under the company's rules, he was at liberty, while living, to draw the whole or any part of the money thus deposited. It was held that the disposition of the money remaining to his credit at his death was testamentary and invalid because not made in the manner prescribed by the statute of wills.

The case in hand differs from *Stevenson* v. *Earl* in the circumstance that, by the form of the deposit, the wife was able to draw on it during her lifetime. The question is, Does this differentiate it, in principle, from the case cited? Had the account been opened in the names "John H. *and* Ella F. Capstick," without more, I should have had no difficulty in finding that they were joint tenants and that Mrs. Capstick took by survivorship. The legal presumption would have been, in the absence of proof to the contrary, that Mr. Capstick intended a present gift and not a resulting trust.

But the account, in the case of both banks, was opened in the names of John *or* Ella. Now the word "or" and the evidence both negative the idea of a joint tenancy. In the case of such a tenancy neither tenant can destroy the estate of the other. The effect of a transfer by one alone, of his interest, is only to create a severance. Says Blackstone (*Book 2, \*185*) "if one joint tenant aliens and conveys his estate to a third person, the joint tenancy is severed and turned into a tenancy in common." In the case in hand either party had the legal right to draw out all the money and thus completely to appropriate and destroy the common fund. It seems, therefore, to be the reasonable inference from the facts that what Mr. Capstick intended when he deposited this money was, to use it at his pleasure and yet, at the same time, to give his wife power to draw, if, in any contingency, she needed money. This is plainly apparent from

26        CASES IN CHANCERY, 1918–1919.

his picturesque but unconventional remark, "You may draw to the full amount, but if you do, I will give you hell." In other words, he meant to give her the equivalent of a power of attorney to be exercised by her in a reasonable way.

In *Schick* v. *Grote, 42 N. J. Eq. 352,* a savings bank account was opened with "A. G. and wife *or* either" and Chancellor Runyon held that the form of the entry was not evidence of gift to the wife; that the money deposited remained the husband's at his death. The reason is evident. The depositor deposits his own money in such fashion that, from the moment of deposit, he is at liberty to draw it out when and as he pleases. This he could not do, if the gift were complete. Says Chief-Justice Gummere in *Stevenson* v. *Earl,* "in order to legalize a gift, there must be not only a donative intention but also, in conjunction with it, a complete stripping of the donor of all dominion or control over the thing given." Such being the rule, it follows inevitably that in a case of this kind only after the wife draws the money does she get any title.

*Marshal* v. *Crutwell Law Rep., 12 Eq. 328,* is a case in point. There plaintiff's husband, being in failing health, transferred his banking account from his own name into the name of himself and his wife and directed his banker to honor checks drawn *either* by himself or his wife. The husband did not explain to his wife what his intention was in making the transfer but was said by the bank manager to have remarked at the time of the transfer that the balance of the account would belong to the survivor of himself and wife. The wife claimed this balance at his death. Sir G. Jessel, from the way in which the money was drawn out and the use to which it was put, inferred a resulting trust in the husband and he did this notwithstanding that the form of entry on the books of the bank (the conjunction "and" was used) appeared, by itself, to warrant the inference of a joint tenancy. The direction to honor checks of either the one or the other coupled with proof of the application of the money, showed, he thought, that the transaction was "simply a mode of conveniently managing the testator's affairs."

In view of the way in which the money deposited through a long series of years, was dealt with by Mr. Capstick, I find it quite impossible to infer an intention to make an immediate gift.   As I have said before, the purpose appears to have been to let Mrs. Capstick, while he was living, draw a part of *his* money thus deposited, if she needed it, and then to give her what remained at his death.   This brings the case directly within the rule laid down in *Stevenson* v. *Earl* and *Cook* v. *Lum, 55 N. J. Law 375.*

I regret the result, for it no doubt runs counter to Mr. Capstick's intentions.   But finding his gift to be essentially testamentary I must hold that he has not made it in the way prescribed by statute.