In opening the accounts, Bullis had either a donative intention of a then present gift to Mrs. White of an interest in the moneys deposited therein, with the right to receive what remained to the credit thereof at his death in case she survived him, or an intention merely to use her as a convenience in withdrawing money for him in his lifetime, with no beneficial interest to her in the money, except, perhaps, after his death, in case she survived him. There being no direct testimony to show what his purpose was, the rights of the donor and donee must be determined upon the effect to be given the writings which they signed and delivered to the several banks, in connection with the surrounding circumstances.
Taking up first the accounts with the Hudson Trust Company and the Lincoln Trust Company. The form of the deposits as appears from the signature cards is not evidence of a gift to her to take effect in praesenti. Schick v. Grote, 42 N.J. Eq. 352;Skillman v. Wiegand, 54 N.J. Eq. 198; Taylor v. Coriell,66 N.J. Eq. 262; Gordon v. Toler, 83 N.J. Eq. 25; McCullough v.Forrest, 84 N.J. Eq. 101; Morristown Trust Co. v. Capstick,90 N.J. Eq. 22; affirmed, 91 N.J. Eq. 152. In the case of the Lincoln Trust Company account, the words "either or the survivor to draw," stamped on the pass book, are not found in the contract entered into between Bullis, Mrs. White and the bank; they were evidently placed on the pass book by a bank official or employe. Notwithstanding that these words are in plain sight on the pass book, which is assumed to have been always in Bullis' possession, in the absence of any evidence that they were placed there by his direction or consent, I think they should not be considered for the purpose of enlarging or explaining the signature card contract signed by Bullis. Taking the signature cards, then, as showing the entire contract between Bullis, Mrs. White and these two banks, in connection with the fact that all money in both accounts originally belonged to Bullis; that it does not appear that Mrs. White ever had possession of the pass books evidencing these accounts; that she never withdrew money from either account and could not withdraw *Page 126 
any in Bullis' lifetime without producing the pass books. I can find no donative intent by Bullis to give Mrs. White a then present interest in these two accounts. The form of these deposits indicates that if he had any donative intent toward her, it was confined to such balance as might remain to his credit at his death, which interest should not vest in her until that time, thus making his gift a testamentary disposition of funds without complying with the law of wills, and therefore void. I reach this conclusion upon the authority of the decisions above cited and the decision in Stevenson v. Earl, 65 N.J. Eq. 721. The amounts standing to the credit of the accounts in the Hoboken Trust Company and the Lincoln Trust Company will be decreed to belong to Bullis' estate.
Taking up next the remaining accounts. The form of deposit used for these accounts is evidence of a gift to Mrs. White to take effect in praesenti, and it is settled law in this state that under such forms the balance to the credit of the accounts belonged to Mrs. White on the death of Bullis (Morristown TrustCo. v. Capstick, supra; New Jersey Title, c., Co. v.Archibald, 91 N.J. Eq. 82), unless it appears from the surrounding circumstances that he had no donative intent in naming her as joint owner with him.
First, it is contended that the fact that all moneys deposited in these accounts originally belonged to Bullis is a circumstance to be considered. But, under the forms of deposit which we are now considering, this fact is immaterial. New Jersey Title, c.,Co. v. Archibald, supra.
It is next contended that the provisions of Bullis' will negative the idea of an absolute gift to Mrs. White of any interest in the seven accounts now in question. His will is dated December 9th, 1914, and by it he bequeathed legacies for a total of $19,600, which includes a bequest of $7,000 to Mrs. White, and he provided for distribution of his residuary estate. The inventory of his estate shows gross personalty of approximately $10,000 (exclusive of all bank accounts involved in this suit, which total approximately $45,000). Whether or not he left any undevised real property does not *Page 127 
appear, but I shall assume he did not. It is argued that he would not have given Mrs. White a legacy of $7,000 had he intended her to have his bank accounts, and that he would not have provided for $19,600 in legacies from an estate of but $10,000. I consider this argument mere speculation, and since we have in writing the plain and unambiguous things he did, I am not willing to guess that he had something in mind other than what he said. In the absence of evidence to the contrary, he is presumed to have known the effect of the agreements of deposit entered into with Mrs. White and the banks. He had opened six of his nine accounts two months prior to the date of his will, and I have found that two of them, for a total of over $9,000, were opened in such form that they could not be paid to Mrs. White as his survivor, and he is presumed to have known that she would not receive the moneys in these two accounts. Why he opened two more accounts less than a month after the date of his will and a third account about sixteen months after the date of his will (the three for a total of $17,000) in such form that he gave Mrs. White a present interest in them, with the right to receive the balances credited to them on his death, I do not know and I do not think that anyone can speculate safely that he had an intention different from what his agreements with the banks said he had. He died more than nine years after the date of his will. I might guess that when he executed his will he had an estate (exclusive of the money in bank) ample to pay the legacies provided for in the will. In fact, less than a month after the date of his will, he opened two of the bank accounts now in question for a total of nearly $12,000, the money so deposited coming from some source other than the bank accounts involved in this suit. I might also guess that when he executed his will he hoped and expected to leave sufficient property applicable to the payment of legacies. I might also guess that after he had executed his will he decided to give his sister, Mrs. White, a greater interest in his estate than he had already provided by bank accounts and will, and therefore he opened three more bank accounts and made them payable to her, jointly with himself, *Page 128 
with right of survivorship to her. But, as I have said, these matters of speculation cannot be used as factors in determining Bullis' intention, and so I cannot use the provisions of his will as evidence that he had an intent with regard to the bank accounts contrary to the terms of his written agreements with the banks.
It is further contended that there being no delivery of the pass books to Mrs. White, the gift to her was not complete because she was unable to draw money from the accounts without possession of these books. One of the essentials of a complete gift inter vivos is that there must be a delivery of the gift to the donee, and in case of a chose in action, the delivery must be of such a nature as the subject-matter of the gift is most capable. Where the subject-matter is a certificate of stock, a bank account or other chose in action standing in joint names, delivery cannot be made to, and possession is usually not held by, both or all joint owners at the same time, and delivery to one must, in the nature of things, be a delivery to the other or others (Dunn v. Houghton, 51 Atl. Rep. 71; East Rutherford B. L. v. McKenzie, 87 N.J. Eq. 375), and since in the present case only one of the joint owners could hold the pass books (unless they were kept in a box or some place to which both could have access), the donor was the natural one of the two to hold them. After all, the gift was not of the books but of the moneys in the accounts, and the books were but the written record issued by the banks of the items of debit and credit to the accounts, and the provision that no withdrawals could be made without presenting the books was mainly for the protection of the banks when called on to make payments. Of course, a donor who desired to guard the accounts against unnecessary and improper withdrawals could take advantage of and have protection under such provision, but had the pass books come into Mrs. White's possession in Bullis' lifetime and had she used them to draw against the accounts, can it be doubted, on the facts here present, that she would have been entitled to hold the amount of her drafts as against Bullis? There is no evidence that the pass books were always in Bullis' possession, and if it is *Page 129 
to be assumed that they were, it is to be noted that for the last three years of Bullis' life a safe deposit box in which they were found was rented in the joint names of Bullis and Mrs. White's husband under terms by which both and the survivor had access, and that the three Commercial Trust Company pass books were out of Bullis' possession as follows: Account No. 1813, June 25th, 1923, and September 27th, 1923; account No. 7236, January 16th, 1922, and June 8th, 1922, and account No. 9873, January 16th, 1922, because entries in the pass books of withdrawals on those dates show that they were made on drafts signed by Mrs. White. The pass book on account No. 1813 of the Commercial Trust Company was also in Mrs. White's constructive possession March 12th, 1916, when she and Bullis went to the bank and $3,500 was drawn out on draft signed by him and deposited in account No. 9873 of the same bank, opened in their joint names under the agreement signed by them on that day. The real question seems to me to be: Do the facts show that there was an intention on Bullis' part to make a present gift of the accounts to Mrs. White, which the latter accepted by signing the deposit agreements? By the agreements with the banks, under which the accounts were opened, Bullis delivered his property to the banks and procured from them a contract with and for the benefit of Mrs. White (as well as himself), and the banks became debtors to both of them. Thus, a complete, valid gift or trust was made, under which the banks contracted to pay to Mrs. White, and I do not consider that delivery of the pass books into her hands was necessary to complete the contracts, at least so far as her right of survivorship is concerned. Dunn v. Houghton, supra; New JerseyTitle, c., Co. v. Archibald, supra; Meriden Trust Co. v.Miller, 88 Conn. 157; Scott v. Berkshire Bank, 140 Mass. 157;Alger v. North End Bank, 146 Mass. 418. Further, can it not be said that Bullis made delivery of the pass books to a third person for Mrs. White? If so, such a delivery would be sufficient, even if the books did not come to Mrs. White's hands until after his death. Hoboken Bank for Savings v. Schwoon,62 N.J. Eq. 503. I have said that for *Page 130 
the last three years of Bullis' life it is assumed that the pass books were kept in a safe deposit box, to which Bullis and Mrs. White's husband and the survivor of them were to have access. Mr. White had no interest in these bank accounts or in the pass books, and it seems to me that if Bullis kept the pass books evidencing accounts payable to Mrs. White after his death, in a safe deposit box, to which Mr. White had access in Bullis' lifetime and after his death, Bullis said to Mr. White, in effect: "I deliver these pass books to you to hold jointly with me. If you survive me, deliver them to your wife, to whom the balances to the credit of these accounts are payable upon my death."
Finally, it is argued that retention of control of these accounts by Bullis, through possession of the pass books, shows that Mrs. White was to have no beneficial interest in the accounts until after Bullis' death; hence, the gift is void as an attempted testamentary disposition of the accounts. There having been a donative intent by Bullis that the gifts should take effect forthwith, that Bullis reserved an interest therein for his life and intended that Mrs. White should not come into possession of her interest until his death, would not invalidate the gift as an attempted testamentary transaction contrary to the statute of wills. Green v. Tulane, 52 N.J. Eq. 169; Sibley v.Somers, 62 N.J. Eq. 595; Mullen v. Mullins, 98 N.J. Eq. 727.
Further, the form of these deposits created the relation of debtor and creditor between the depositors and the banks, under which the banks contracted with Bullis and Mrs. White to pay to Mrs. White, should she survive Bullis, all moneys the banks owed on the accounts, so that Mrs. White is entitled to the moneys under her contractual relation with the banks. New Jersey Title,c., Co. v. Archibald, supra.
The amounts standing to the credit of the accounts in the Hudson Trust Company, Commercial Trust Company (three accounts), Hoboken Bank for Savings and Provident Institution for Savings (two accounts) will be decreed to belong to the estate of Lettie A. White. *Page 131