In 1937, Dr. Francis R. Haussling and Miss Catherine Guenther called at the Howard Savings Institution and opened an account with the deposit of $10,085. The money belonged to the doctor. On the card which they both signed, appears the title of the account: "Francis R. Haussling and Catherine Guenther. Payable to either or survivor. I hereby agree to conform to and abide by the rules and by-laws of the Howard Savings Institution." *Page 497 
The pass-book issued to them contained the information "No payments will be made at any time unless this pass-book is presented."
Dr. Haussling died four years later. In the meanwhile, the account remained untouched, without deposits or withdrawals. The pass-book, which had been handed to Miss Guenther at the time the account was opened, continued in her possession except that each winter she gave it to the doctor or his secretary to have the interest written up, and then it was returned to her without delay.
Miss Guenther claims title to the account and so do the executors of Dr. Haussling. The only items of proof not already mentioned are these: A couple of days before the account was opened, Dr. Haussling telephoned Mr. Taylor, a lawyer friend (now deceased), that he had $10,000 which he wanted to dispose of in such manner that Sister (meaning Miss Guenther) would have easy access to it, if anything should happen to him. The witness did not hear the reply. In the years after the account was opened, Dr. Haussling paid an income tax on the interest credited to the account. His tax returns were prepared by an accountant after the data had been assembled by his secretary.
In cases of this kind, courts must determine which of two situations — each rather common — exists. In one group of cases, the fund continues to belong to the original owner, since he did not intend to give away any interest in it; the other person is given power to draw the money merely for the convenience of the first. In the other class, there is a "donative intent." If such an intent is found, the next question is, whether it was executed, for equity will not enforce a promise to make a gift. But the rule is now well established that there may be a present gift of a future interest in a fund, or in the balance of the fund remaining when the time for enjoyment arrives. Such a gift is valid even though the donor reserves the power to draw out the fund. Fears that such a disposition is testamentary in character and conflicts with the law of wills have been dissipated by our Court of Errors and Appeals. New Jersey Title Guaranty andTrust *Page 498 Co. v. Archibald, 90 N.J. Eq. 384; 91 N.J. Eq. 82; Kaufman v.Edwards, 92 N.J. Eq. 554; Commercial Trust Co. v. White,99 N.J. Eq. 119; 100 N.J. Eq. 561. When Dr. Haussling deposited his money with the bank on contract that in the event Miss Guenther should survive him, the bank would pay her whatever remained in the account at his death, he made a present, effective gift to her — provided he had the donative intent. There was nothing further for him to do in order to execute the gift, except perhaps to give her the pass-book. This he did.
The evidence of donative intent is not extensive but it is sufficient. The direction to pay the "survivor" is itself evidence of such intent, for it is unlikely that he intended that Miss Guenther, if she should survive him, should draw the money only for the purpose of handing it over to his executors. The fact that nothing was withdrawn from the account in the doctor's lifetime is some indication that the joint account was not opened for his own convenience. His statement to Mr. Taylor that he wanted Miss Guenther to have easy access to the fund, if anything should happen to him, was ambiguous. "If anything should happen" might mean illness which would prevent his calling at the bank, or even signing a check. More likely, it referred to his death. The executors stress the inclusion of the interest in his income tax return. Presumably he knew it was included, even though the return was prepared by others, but this is very slight proof that he intended Miss Guenther, as survivor, to take only as agent and not for her own use.
If Miss Guenther's claim needs additional support, it may be found in the statute R.S. 17:9-5. This provides that when a deposit is made "in any bank or trust company" in the names of two persons, "payable to either or to the survivor," then in case of the death of either, the balance shall be paid to the survivor "and the legal representatives of the one dying shall not have any claim or right thereto, notwithstanding that such balance or any part thereof may have been the property of the one dying." This enactment is dispositive of the case if it applies to a savings bank. Hickey *Page 499 
v. Kahl, 129 N.J. Eq. 233. But counsel for the executors argues that it does not apply.
The section had its origin in an act relative to the payment of deposits made with any bank or trust company in the name of two persons, P.L. 1907 p. 75; Comp. Stat. p. 178, and radically amended by P.L. 1936 p. 553. The amendment illustrates a policy which had already appeared in a series of acts passed in 1932, now found in R.S. 17:9-4, relating to deposits to the credit of one person in trust for another. Before the enactments of 1932 and 1936, the title to a trust account after the death of the trustee, or joint account, after the death of one of the parties, rested on extrinsic evidence which was often of very unsatisfactory character. A great deal of litigation resulted and doubtless the real intention of the parties was often frustrated. For remedy, the legislature provided a simple rule for ascertaining the owner. No reason appears why the statutory rule should govern a joint account in a commercial bank, but not one in a savings bank. The words in section 5, "any bank or trust company" are broad enough to cover both classes of banks; the policy of the statute is equally applicable to both. I conclude, therefore, that the section operates in the case before me. The argument of the executors rests on the circumstance that when the act of 1907 was passed, there was already in our statute books a similar act relating specifically to savings banks, P.L. 1906 p.356 § 27. Hence they say, the 1907 act and the amendment thereto passed in 1936 were not intended to apply to a savings bank. But this argument is not sufficient in my opinion to override the conclusion which I have stated.
 Let there be a decree for Miss Guenther. *Page 500