This appeal pertains to the legality of a transfer inheritance tax assessment. The transcript of the antecedent proceedings before the Tax Commissioner discloses the facts from which the discordant views have arisen.
On June 18th, 1929, one Richard Kelly with his own personal funds opened an account, commonly known as a checking or commercial account, with the Royal Bank of Canada, at No. 68 William Street in the City of New York, payable to himself or to his wife, Matilda Kelly. The signature card evidential of the contractual engagement expresses the terms as follows:
"We, the undersigned, hereby agree, jointly and severally, and each with the other, and with the Royal Bank of Canada, that all moneys deposited by either or both of us to the credit of our joint names, and the interest thereon, shall be subject to withdrawal by either of us. And each of the undersigned hereby authorizes the said Bank to pay any moneys which may be at any time so deposited, and any interest thereon, to either of the undersigned."
It is immediately noticeable that the declaration of the type and character of the account does not embody the more familiar phrases "belongs to us as joint tenants and will be the absolute property of the survivor of us," or "payable to either or the survivor," or "in the event of death of either to belong to the survivor," or "the balance at the death of either to belong to the survivor." Whether the account was entitled "Richard Kellyand Matilda Kelly" or Richard Kelly or Matilda Kelly is not definitely revealed. It is characterized, however, in the stipulation of facts as a joint account.
It is acknowledged that all deposits to the credit of the account during the succeeding years were made by Mr. Kelly with his own moneys, and all the numerous withdrawals from the account were made by him except that of July 11th, 1942, *Page 318 
to which reference will again presently be made. The balances at recent dates were:
 September 4th, 1939 ........................... $106,562.60
 July 1st, 1940 ................................ 82,719.89
 July 10th, 1941 ............................... 98,316.55
 July 10th, 1942 ............................... 135,158.64

On or about July 7th, 1942, at the age of sixty-nine years, Mr. Kelly was advised by his physician to undergo a surgical operation. On July 11th, 1942, Mrs. Kelly withdrew from the bank account the sum of $120,000 and deposited the funds to her own credit. Incidentally, I discover from the tax report subsequently submitted to the Commissioner that the sum so withdrawn was ninety per cent. or more of the cash assets of Mr. Kelly. He died at the Orange Memorial Hospital on August 18th, 1942, thirty-eight days after the event of the withdrawal of the $120,000 from the account. The causes of his death are authentically certified to have been "chronic myocarditis, general arterial sclerosis and Ca. of Sigmoid." A credit balance of $5,718.68 remained in the joint bank account on the date of the decedent's death. The decedent made a testamentary disposition of his entire estate to his widow.
Mr. Kelly was a resident of West Orange, Essex County, New Jersey, and the Tax Commissioner, in computing the tax to be levied on the transfer of the assets of the decedent's estate, incorporated the sum of $120,000, withdrawn by Mrs. Kelly, in the gross estate of the decedent. The criticisms of that assessment, as presented by the petition of appeal are that (6a) "the said withdrawal was not a transfer or a gift made by decedent at all and hence could not be in contemplation of death," and (6b) "the decedent made a gift to your petitioner [Mrs. Kelly] of one-half of the amount of each deposit made by him [Mr. Kelly] in said account at the time of each deposit."
Since it is conceded that all credits to the account were derived from the individual moneys of the decedent and there is an absence of any supplementary proof, by what means other than by some form of a voluntary gift was the *Page 319 
account or any part of it transported from the ownership of the decedent to that of his wife? Therefore the controversial issue introduced by this appeal may be solved, I think, by initially determining whether there was a valid inter vivos gift of the account, wholly or in part, by Mr. Kelly to his wife.
I have not ignored either the fact that the account was established and had its situs in the State of New York, or the principle that a gift of money or choses in action is governed by the law of the jurisdiction where the gift is made. Cutts v.Najdrowski, 123 N.J. Eq. 481; 198 Atl. Rep. 885. The pertinent law of New York is neither pleaded nor disclosed. The presumption will therefore be indulged that the common law principles prevail in that state. Waln v. Waln, 53 N.J. Law 429;22 Atl. Rep. 203; Coral Gables, Inc., v. Kretschmer, 116 N.J. Law 580;184 Atl. Rep. 825; Franzen v. Equitable Life Assurance Society ofUnited States, 130 N.J. Law 457; 33 Atl. Rep. 2d 599; P.L.1942 ch. 104 p. 365 § 1, amending P.L. 1941 ch. 81 p. 193 §1, supplementing R.S. 2:98; N.J.S.A. 2:98.
The principle of law relevant to the theme of inter vivos
gifts of both tangible and intangible things is at present irrefutable. It is neither vague nor indistinct. Nevertheless an examination of the outstretched procession of decisions displays the supervening difficulty of appropriating the principle to cases factually dissimilar. The rules are inveterate but the facts in this class of cases are so often contrastive and variant. A persistent precedent conformable to the circumstances of the particular case is not always observable in our own reported decisions.
I undertook to epitomize the requisite elements of an intervivos gift in Hanstein v. Kelly, 131 N.J. Eq. 132, 134;24 Atl. Rep. 2d 386: "first, donative intent on the part of the donor; second, an actual (or symbolical) delivery of the subject-matter of the gift; and, third, an absolute relinquishment by the donor of all ownership and dominion over the subject-matter of the gift, at least to the extent practicable or possible, considering the nature of the thing given." The proof of the existence of these essential elements should *Page 320 
be clear, cogent and persuasive. Cessna v. Adams, 93 N.J. Eq. 276; 115 Atl. Rep. 802; Stines v. Carton, 98 N.J. Eq. 415;129 Atl. Rep. 251; Reeves v. Weber, 111 N.J. Eq. 454;162 Atl. Rep. 566.
The supposition is erroneous that one who deposits his own funds in a new account in the name of himself and another is to be thereby conclusively presumed to have made a gift of one-half of the account to the other or to have created a joint tenancy in the account. Taylor v. Coriell, 66 N.J. Eq. 262;57 Atl. Rep. 810; McCullough v. Forrest, 84 N.J. Eq. 101; 92 Atl. Rep. 595;Schippers v. Kempkes, 67 Atl. Rep. 74. A simple and uncompounded joint account might in reasonable probability be intentionally originated and maintained solely for the expediency of the one depositor. A joint account, i.e., one entered to the credit of two individuals, is not inevitably to be recognized as inherently a joint tenancy. Where the moneys deposited belonged solely to the one, some fact or circumstance evidential of a donative intent must be apparent to warrant the inference of a joint tenancy. Morristown Trust Co. v. Capstick, 90 N.J. Eq. 22; 106 Atl. Rep. 391; affirmed, sub nom. Morristown Trust Co.
v. Safford, 91 N.J. Eq. 152; 108 Atl. Rep. 926; Lester v.Guenther, 132 N.J. Eq. 496; 28 Atl. Rep. 2d 777; affirmed,134 N.J. Eq. 53; 33 Atl. Rep. 2d 815.
The transcript of the proof adduced before the Commissioner is not inhabited by any evidence indicative of a gift, unless a manifestation of it is to be seen in the mere creation of the account in conformity with the words portrayed by the signature card. That exhibit clearly displays the range of the intention of the parties. Mr. and Mrs. Kelly agreed with the bank (1) that all moneys deposited to the credit of the account should "be subject to withdrawal by either," and (2) that the bank was authorized "to pay any moneys which may be at any time so deposited * * * to either." Where in the words there is no uncertainty or ambiguity, then no exposition contrary to or beyond the expressed words should be fabricated.
Any inferences or implications that might be supposed to arise from the creation of a savings account are not permissible *Page 321 
in the present case. During the span of years from the institution of the account until the critical illness and apprehended incapacity of the decedent, he exercised complete mastery of the account, materially reducing it as he pleased, augmenting it and utilizing it currently in his personal affairs. Mrs. Kelly does not assert that the account, or any share of it, was given to her by her husband. Optimus interpres rerum usus.
She divulges the reason which motivated her to withdraw so substantial a sum on July 11th, 1942: "Your deponent felt, however, that in view of her belief that decedent would be ill for a long time it would be better for her to withdraw a substantial amount of this money from the joint account in order to provide for the expenses which might be incurred during any long period of convalescence of decedent * * *." She ascribes her act to a desire to conveniently meet two apprehended circumstances — the physical incapacity of her husband to act for himself, and the expenses to be occasioned by a protracted period of his convalescence. Parenthetically, one wonders whether the possibility of his death did not also unwelcomely flash across the minds of both.
In the recently reported case of Lester v. Guenther, supra, the joint account was payable "to either or survivor;" the pass book was delivered by the depositor to the alleged donee and the depositor never made any withdrawal from the account. Those circumstances manifestly significant in the ascertainment of a donative intent are not present in the instant case.
The circumstances of this case are more logically reconcilable with the conviction that in orginiating the bank account, Mr. Kelly intended to retain dominion over it, use it at his own pleasure and for his own purposes, and yet, also clothe his wife with power to draw upon it, if, in any contingency, it became necessary or convenient. Simply stated, he intended only to bestow upon his wife the equivalent of a power of attorney. Cf.Morristown Trust Co. v. Capstick, supra.
The cases of Goc v. Goc, 133 N.J. Eq. 206; 31 Atl. Rep.
2d 335; affirmed, 134 N.J. Eq. 61; 33 Atl. Rep. 2d *Page 322 870; Steinmetz v. Steinmetz, 130 N.J. Eq. 176; 21 Atl. Rep.
2d 743; Commercial Trust Co. v. White, 99 N.J. Eq. 119;132 Atl. Rep. 761; affirmed without opinion, 100 N.J. Eq. 561;135 Atl. Rep. 916; New Jersey Title Guaranty and Trust Co. v.Archibald, 91 N.J. Eq. 82; 108 Atl. Rep. 434, and many others, treat of the rights of parties where a joint tenancy is found to exist. The statutory provisions (R.S. 17:9-5; N.J.S.A. 17:9-5) and their legislative antecedents have no application to financial institutions transacting business in another state and do not, ex necessitate, establish a gift where none was intended. Gordon v. Toler, 83 N.J. Eq. 25; 89 Atl. Rep. 1020;Lester v. Guenther, supra.
If the deduction that a gift of the fund was effectually consummated at the time of the withdrawal is deemed warranted, the facts accompanying and surrounding the transfer, particularly in view of the statutory presumption, would impel me to conclude that the gift was at that time made in contemplation of death within the import of our statute (R.S. 54:34-1, c; N.J.S.A.54:34-1, c) and pertinent cases.
It is resolved that the fund was properly incorporated as a part of the taxable estate of the decedent. The determination of the Tax Commissioner and the assessment are therefore affirmed. *Page 323