This appeal pertaining to the legal propriety of a transfer inheritance tax assessment was previously heard and decided. The significant factual circumstances, except as now innovated, were stated in the conclusions then reported. Kelly v. Kelly,134 N.J. Eq. 316; 35 Atl. Rep. 2d 618.
Counsel for the appellant have since been informed that the bank account opened by Mr. Kelly on June 18th, 1929, to which the antecedent decision related, was on May 18th, 1937, transformed into a new account declared to be significantly *Page 76 
distinguishable in type and import. An application for a re-hearing of the appeal because of the discovery of the organization of the new account was not resisted by the respondent, and presumably by reason of the subject-matter of the proceedings, an order for a re-hearing was endorsed by the respondent and hence was advised. Such a liberal course of procedure, however, is not to be respected as a precedent. Truth is sometimes lost through too much disputation.
I infer that the Tax Commissioner, notwithstanding the additional facts now stipulated, adheres to his primary conclusion that the $120,000 withdrawn by Mrs. Kelly on July 11th, 1942, from the existing bank account should be incorporated in the gross estate transmitted by the decedent to his widow at his death, or if accomplished with decedent's acquiescence, it constituted a transfer made by the decedent in contemplation of death.
In my former opinion (Kelly v. Kelly, supra) I resolved that the signature card and the material circumstances did not satisfactorily evince an intention of the decedent to institute a joint tenancy but more reasonably, a desire on his part to bestow upon his wife the equivalent of a power of attorney to draw from the account if, in any contingency, it became necessary or convenient. The facts as they were then assembled enabled me to confirm the judgment of the Commissioner. Does the present disclosure of the transformation of the bank account call for a modification or inversion of the former decision?
Assuredly, the structural substance of a bank account as disclosed by the terms of its creation is exceedingly noteworthy. The stipulations under which an account is originated and maintained may sometimes compose persuasive evidence of a deliberate gift by each joint owner to the other to take effectin praesenti. The intent with which the alleged donor established the account is a fact always fundamental.
The constitution of the bank account now presented for consideration is more abundantly expositive of the ostensible intention of the parties. The account formerly submitted was, in that respect, noticeably deficient. The contractual engagement of May 18th, 1937, is expressed as follows: *Page 77 
"To
 THE ROYAL BANK OF CANADA New York Agency:
We, the undersigned, having opened a Current Account Deposit Account with the above named Branch of THE ROYAL BANK OF CANADA in our joint names do for valuable consideration (receipt whereof is hereby acknowledged) hereby mutually agree, jointly and each with the other or others of us and also with the said THE ROYAL BANK OF CANADA, that all moneys now or which may be hereafter deposited to the credit of the said account, and all interest thereon, shall be and continue the joint property of the undersigned with right of survivorship; and each of the undersigned in order effectually to constitute the said joint deposit account hereby assigns and transfers to all of the undersigned jointly and to the survivor or survivors of them any and all moneys which may have been heretofore or may now or hereafter be deposited to the credit of the said account together with all interest which may accrue thereon to be the joint property of the undersigned and the property of the survivor or survivors of them.
Each of the undersigned hereby irrevocably authorizes the said Bank to accept from time to time as a sufficient discharge for any sum or sums withdrawn from the said deposit account any receipt, cheque or other similar document signed by any one or more of the undersigned without any further signature or consent of the other or others of the undersigned thereto.
It is understood and agreed by the undersigned with each other and with the said Bank that the death of one or more of the undersigned shall not affect the right of the survivors or any one of them or of the sole survivor to withdraw all of the said moneys and interest from the said Bank and to give a valid and effectual discharge or receipt therefor. Provided, however, that this understanding and Agreement is subject to the requirements of any Succession Duty Act in respect of such moneys and the interest thereon.
This Agreement shall be binding upon the heirs, executors, administrators, and assigns of each of the undersigned parties hereto."
The foregoing agreement was signed and sealed by Richard Kelly and his wife, Matilda Kelly.
It is now revealed that the decedent and his wife on May 18th, 1937, executed an agreement by which each purported to assign and transfer to the other and to the survivor, any and all moneys which had been, or were then or thereafter to be deposited to the credit of the account, to the end that the account should be and continue to be "joint property." There is no tenancy by the entirety in personal property in this state. An intention to make the account "joint property" is indubious if its ascertainment is confined to the interpretation *Page 78 
of the language of the agreement. The inclusion of the right of survivorship portrays an aspect characteristic of a joint tenancy. It is my conviction that the words of the agreement,verbatim et literatim, are descriptive of a joint tenancy. To technicalize that point is to waste time. For if the contention of the appellant is accepted, the ultimate result in the circumstances of this particular case would be the same if the parties are supposed to have become tenants in common. Cf.Franklin National Bank v. Freile, 116 N.J. Eq. 278;173 Atl. Rep. 93; affirmed, 117 N.J. Eq. 405; 176 Atl. Rep. 167. By virtue of the agreement, if literalized, each thereafter had an undivided moiety of the whole. 4 Kent. Comm. *360.
And so the agreement itself, in its explicit diction exhibits to a prima facie degree a donative purpose on the part of the decedent to constitute immediately a valid gift to his wife of a joint proprietary ownership of the account. New Jersey TitleGuarantee and Trust Co. v. Archibald, 91 N.J. Eq. 82;108 Atl. Rep. 434. It is, however, only prima facie evidence. It is not to be supposed in these tax cases that the mere creation of an apparent joint tenancy carries with it an indestructible presumption of a donative intent conclusively probative of a complete and immediately effective transfer of a beneficial interest in praesenti. Trenton Saving Fund Society v. Byrnes,110 N.J. Eq. 617; 160 Atl. Rep. 831, is a case in which a contrary intention was nevertheless distinct.
On July 11th, 1942, a balance of $135,408.68 remained to the credit of the joint account. On that date Mrs. Kelly withdrew from the account the sum of $120,000 which she thereafter deposited to her own exclusive credit.
If it is assumed that Mr. Kelly and his wife were in fact joint tenants of an account to which the total credits amounted to the maximum sum of $135,408.68, then the withdrawal therefrom by Mrs. Kelly of $120,000 severed the unity of interest and possession and destroyed the joint tenancy, whereupon Mr. and Mrs. Kelly became tenants in common of the entire fund in equal shares.Steinmetz v. Steinmetz, 130 N.J. Eq. 176; 21 Atl. Rep. 2d743; Goc v. Goc, 133 N.J. Eq. 206; 31 Atl. Rep. 2d 335; *Page 79 affirmed, 134 N.J. Eq. 61; 33 Atl. Rep. 2d 870. Such would continue to be the amplitude of the interests of each in the fund at the time of the decedent's death.
There is, unfortunately, a poverty of evidence concerning the details of the former account and of the account as transformed, in such particulars as the quantum of the credit with which each account was originated, the dates and amounts of its augmentations and diminutions. If it were to be implied that pursuant to the terms of the account, Mrs. Kelly acquired by gift one-half of every deposit at the time it was made by her husband, a calculation of her ultimate share would be impossible from the meager information supplied. Was the decedent engaged in business? If so, was this account utilized by him in that pursuit? Did the total of the decedents' withdrawals on occasions during the period of years exceed a half portion of the total deposits? What are the explanations concerning the substantial fluctuations of the four credit balances which are revealed? No proof has emerged from that broad field of inquiry, but the shadows arouse some curiosity. Certainly, the appellant cannot venture to propose that the gift or gifts were perfected upon the dissolution of the alleged joint tenancy, occurring thirty-eight days before the donor's death.
The basic controversial question still endures — whether in the light not only of the external form of the bank account but of all the pertinent circumstances as well, a donative intent and purpose on the part of the decedent is reasonably probable.
So many maneuvers have been ingeniously designed to elude inheritance taxes that the Tax Commissioner prudently looks beyond the ceremonial acts and declarations of a decedent and also explores the factual circumstances that have accompanied and surrounded the inter vivos transaction, amongst which a source of reliable enlightenment often may be found. For example, where, as here, an inter vivos gift is alleged, it is exceedingly important to ascertain whether the predicated donor in fact relinquished or retained dominion and control over the subject-matter and whether the designated donee actually accepted the gift. *Page 80 
It is acknowledged that the initial account was opened on June 18th, 1929, by the decedent with his own personal funds, and that every dollar deposited to the credit of these accounts was supplied by the decedent. I quote from my previous opinion,Kelly v. Kelly, supra: "During the span of years from the institution of the account until the critical illness and apprehended incapacity of the decedent, he exercised complete mastery of the account, materially reducing it as he pleased, augmenting it and utilizing it currently in his personal affairs." The account, although subjected to different terms on May 18th, 1937, nevertheless continued to be a so-called "current account." On July 11th, 1942, before the withdrawal made by Mrs. Kelly, the account consisted of more than ninety per cent. of all cash assets available to Mr. Kelly.
Mr. Kelly was then afflicted with "Chronic myocarditis, General arterial sclerosis and Ca. of Sigmoid." His admission to a hospital was imperative. There was then on deposit in the bank in the joint names of Mr. Kelly and his wife, and payable to the survivor, the sum of $135,158.64, which, upon the death of Mr. Kelly and the survivorship of his wife, would "be deemed a transfer taxable in the same manner as though such property had belonged absolutely to the deceased joint tenant or joint depositor and had been devised or bequeathed by his will to the surviving joint tenant * * *." R.S. 54:34-1, f; N.J.S.A.54:34-1, f. It was amid such circumstances that Mrs. Kelly withdrew from the bank account the sum of $120,000. She had never before exercised her authority to draw against the account. What event other than his death did he or she suppose would terminate her power and authority to draw upon the account in such amounts as might be currently required if it became necessary or convenient for her to do so? Yet she divulges the reasons which motivated her to withdraw such a substantial sum to be the probable inability of her husband to act for himself and the defrayment of expenses likely to be occasioned by a protracted period of his convalescence.
It is more than significant that Mrs. Kelly never evinced by act or word any conviction that she possessed a beneficial *Page 81 
ownership of a share of the account. She professes no such belief in her affidavit, and the vital agreement of May 18th, 1937, by which her joint interest is said to have been created, had evidently escaped her recollection entirely at the time she submitted the deposition. Her purpose, she states, in obtaining the substantial part of the account was not to acquire the share to which she supposed she was entitled, but to administer and disburse it for the needs of her husband.
Despite the counterpane of the written agreement of May 18th, 1937, the undisguised practices of the parties seem to bespeak an intention on the part of Mr. Kelly to continue to retain dominion over the bank account for his own exclusive uses and purposes. An intention recognized and respected by his wife. Cf. MorristownTrust Co. v. Capstick, 90 N.J. Eq. 22; 106 Atl. Rep. 391;affirmed, sub. nom. Morristown Trust Co. v. Safford, 91 N.J. Eq. 152; 108 Atl. Rep. 926.
Circumstantially, the solitary withdrawal of $120,000 by Mrs. Kelly thirty-eight days before the death of her husband has the complexion of a transfer made at the dictate or with the acquiescence of the decedent and in consequence of the statutory presumption, it would, in the absence of proof to the contrary and in the circumstances here disclosed, be taxable as one made in contemplation of death. R.S. 54:34-1, c; N.J.S.A. 54:34-1,c, and pertinent cases. The executrix in fact paid a gift tax to the federal collector of internal revenue computed upon the withdrawal of the $120,000.
If there was no valid inter vivos gift of the account, wholly or in part, by Mr. Kelly to his wife, then the fund was properly incorporated as a part of the taxable estate of the decedent.
The supplementary facts introduced at the re-hearing of this appeal do not persuade me that the assessment imposed by the Tax Commissioner is erroneous. This memorandum is intended to be subjoined to the memorandum previously filed.
The assessment will be affirmed. *Page 82