23 N.J. Super. 274 (1952)
93 A.2d 35
MICHAEL FRUZYNSKI, PLAINTIFF-RESPONDENT,
v.
HELEN RADLER, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF MARY FRUZYNSKI, DECEASED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1952.
Decided November 26, 1952.
*276 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Felix Rospond argued the cause for plaintiff-respondent (Messrs. Rospond & Rospond, attorneys).
Mr. William V. Azzoli argued the cause for defendant-appellant.
The opinion of the court was delivered by FRANCIS, J.C.C.
In this action respondent sought the following equitable relief: (1) the setting aside as to him of a conveyance of certain premises made by his deceased wife and himself to appellant; (2) an accounting of the rents and profits received from the premises, and (3) the establishment of his interest in certain savings accounts in the names of himself and his deceased wife. Appellant claimed that the deed represented a gift, that the bank accounts came to her either as gifts from her mother, respondent's wife, or under the mother's will, and she denied any right to an accounting. In addition, appellant brought into the case by her answer and separate defenses, and not by way of counterclaim, the issue of respondent's liability on certain notes held by her and for the payment of his deceased wife's funeral expenses. All of the issues were presented at the trial without objection, and accordingly we shall determine such of them as have been made the subject of appeal.
The trial court adjudged the conveyance to be invalid as to respondent, that the bank accounts belonged to him, and ordered an accounting of the proceeds of the property conveyed. Further, he found respondent liable to appellant *277 on three promissory notes totaling $4,700, and not liable on one note for $3,500. No disposition was made in the oral opinion or in the judgment with respect to the funeral bill.
The appeal attacks the judgment in all of its aspects except as to the disposition of one of the savings accounts, namely, that in the Fidelity Union Trust Company of Newark.
The record contains a maze of conflict and contradictions. The questions involved were in large measure factual and their resolution depended for the most part upon the credibility of the various witnesses. Therefore, weighty consideration must be given by this appellate tribunal to the conclusions of the trial court who saw and heard the respective protagonists and their supporters.
Respondent and his deceased wife were married in 1922; she died on March 14, 1951 at age 76 years; he was 18 years younger. She had been married previously and appellant is her daughter by the first marriage.
Respondent is a cooper by trade and has worked for the same employer for 39 years. His education was limited to four years of schooling in Poland, and he does not read English. Although his earnings do not seem to have been large, prior to his marriage in 1922 he had accumulated over $4,500 in a savings account and when married had just short of $4,000 therein.
Decedent also had some funds when married, the amount of which is in dispute. It is unquestioned that on her first husband's death she became owner of premises on South 13th Street, Newark, which she sold three years before her marriage for $8,000. Respondent claimed that her net proceeds were only $3,000 because of the existence of a $5,000 mortgage. Appellant asserted that in addition to these proceeds her mother had received some life insurance benefits and that she had some money in a building and loan association. Respondent said the insurance benefits were used to pay the funeral bill and then denied that his wife had assets in the *278 building and loan association when they were married. This conflict is typical of the many that existed at the trial on practically every material phase of the case.
Two weeks after the marriage respondent's savings account was closed out and the following day title was taken in their joint names to property on South 21st Street, Newark, New Jersey.
The decedent continued to work after 1922 and remained so engaged until around 1930. From that time until her death she remained at home with no source of income other than her husband's wages and rents from some properties she and her husband acquired.
In 1926 the 21st Street property was sold and with the sum realized plus some additional cash 68-70 Park Place, Irvington, was purchased in their joint names. This is the property, which was deeded to appellant by respondent and his wife on July 10, 1948 and which is involved in this action.
The record discloses that on April 23, 1932 Mr. and Mrs. Fruzynski loaned $5,000 to one Phillips and others and received in return a second mortgage covering premises at 138-142 Norwood Street, Newark, New Jersey. Subsequently they foreclosed this mortgage and on February 21, 1933 bought in at the sheriff's sale, subject to a first mortgage of $25,500.
It is plain from the record that the husband and wife were pooling their resources in large measure and acting jointly in their real estate operations. In this connection an element of the utmost significance in the determination of the case manifests itself. The deceased wife handled all of their business affairs; she gave the instructions and she was the "boss." She handled the bank accounts, collected the rents, paid the expenses, and deposited the balance. After 1930, although she had ceased working, she was able to make substantial deposits in five separate savings accounts maintained in her own name in the Fidelity Union Trust Company, the Howard Savings Institution, the Irvington Trust Company, *279 and the Irvington National Bank. At the time of her death the balances in these accounts totaled $13,085.06. And an unexplained withdrawal of almost $4,000 from one of them appears to have been made between April 1947 and December 1950.
A member of the bar who was called as a witness said that all of the real estate and business transactions were handled by Mrs. Fruzynski; all of his dealings were with her at his office; the husband never came there. The necessary papers were prepared by him and brought to their home in the evening and Fruzynski would sign them after work. However, this attorney did not handle the questioned deed.
Appellant was married and her husband died in 1932. Through him she inherited somewhat in excess of $7,300 and in addition she claims to have accumulated savings from her earnings as a graduate nurse.
It is not clear from the record whether or not appellant and her husband lived with Fruzynski and his wife during all of their married life before the husband's death. However, there is no doubt that from 1934 until after the death of Mrs. Fruzynski she and her infant son lived with them. It is obvious that she was close to her mother and frequently assisted her in the business and financial transactions. She attended the closings, aided in the collections of rents, and drove her mother to the banks. After the mother became incapacitated through a stroke in July 1950, she took over as manager of their affairs; according to Fruzynski she dealt with the real estate agent and the lawyer; she "did the bargaining" about prices and she took care of the "painter, the plumber and everything else."
Appellant's testimony discloses that from 1946 through 1950 she gathered the necessary data and arranged for the preparation and filing of the joint income tax returns of her mother and stepfather. In these returns she and her son were listed as dependents and respondent's wages for the years covered were listed as $5,090.40, $4,867.20, $4,550.60, $3,888, and $4,537.80.
*280 According to appellant her mother gave her substantial sums of money, such as $1,700 drawn from the Cartaret Savings & Loan Association, and a total of $3,000 withdrawn from the Irvington National Bank. In addition, she paid $350 to an attorney who defended appellant's son when he was in some difficulties with the law; she expended $1020 for special reading instruction for the boy at New York University, and she met the expense of his attendance at Admiral Farragut Academy. These sums, appellant said, were not in satisfaction of any of the notes of the mother and stepfather which she held and which are a part of the controversy here. On September 27, 1940 decedent's will was drawn leaving all of her estate to appellant. Respondent was never informed of the will.
On July 10, 1948 the challenged deed conveying to appellant the premises on Park Place, Irvington, was executed by decedent and respondent, and appellant said it was delivered to her at that time. Respondent admits his signature thereon but denies that he ever discussed such a gift or knowingly signed the deed or that he ever intended to make a gift or any kind of conveyance to appellant.
The circumstances attending execution are sharply in dispute and completely irreconcilable. Appellant alleges that her stepfather made all the arrangements and selected the attorney to handle the matter. This attorney was not the person who had represented the family for years, and unfortunately her death made her unavailable as a witness at the trial.
In any event, in the evening of July 10, 1948, according to appellant, the attorney appeared at their home and decedent and respondent executed, acknowledged and delivered the deed to her for the purpose of making a gift.
With respect to the reason for the transfer appellant testified at one time that her stepfather said he was getting old and he was not an American citizen, that "Mother is sick, we got to straighten this out sooner or later. We may as well give it to you now." And at other points in her testimony *281 she said that the deed was in return for the services she had rendered and in satisfaction of their indebtedness to her. Then on cross-examination, when asked if the transfer was in satisfaction of all or any one of their notes to her, she replied that she could not remember.
Following the delivery of the deed appellant did not record it. In fact, it was not recorded until after the wife's death in 1951, it being kept in Mrs. Radler's possession in the meantime.
In order to establish a valid inter vivos gift certain essentials must be shown. They are: (1) a donative intent on the part of the donors, (2) actual delivery of the subject matter, (3) relinquishment of dominion over the subject matter. Alburger v. Crane, 5 N.J. 573 (1950).
On the vital questions of intention to make a gift and relinquishment of dominion a number of significant facts were shown which are opposed to the existence of these essentials. The regular family attorney was not engaged to handle the transfer; after execution of the deed, the wife continued to manage the property and collect the rents; the tax records remained unchanged and taxes were paid in the original names; rent receipts were issued by her and by appellant in the wife's name and the proceeds from the property were reported as income by respondent and his wife to the knowledge of appellant who arranged for the filing of the returns; the fire insurance policies were never endorsed to show the new ownership; the inheritance tax return filed by appellant contains a denial of the making of any transfers of a material part of the estate without receiving full consideration therefor more than two years before the death; appellant never told the tenants she was the owner; she did not consider herself the "boss" until the deed was recorded; according to a witness called by appellant, he had a conversation with Fruzynski in 1950 following his wife's stroke and, of course, long after the making of the alleged deed, in which he said he was in "hopes of being able to leave the property in appellant's *282 name" if anything happened to his wife; and finally the failure to record the deed for almost three years.
It is obvious from the proof that respondent allowed his wife and stepdaughter to conduct all their business affairs; that he relied upon them; that they were the dominant influences in the household and that a confidential relationship existed between them and him. The complaint charges that the deed was procured by fraud. Consideration of all of the facts leads to the conclusion that the preponderance of the evidence supports the charge. We are satisfied from the record that in some manner arising out of respondent's confidence in his wife and appellant, he was induced to sign the deed without any knowledge or information as to the import of the document and without any agreement or intention to make a gift. Cf. Page v. Afflerbach, 102 N.J. Eq. 390 (Ch. 1928), affirmed 104 N.J. Eq. 489 (E. & A. 1929)).
The fact that an acknowledgment appears on the deed, while a factor to be considered, is not by any means conclusive. No witness said that the acknowledgment was read to him and for aught that appears it was completed as a routine matter and without reading.
On this phase of the case therefore the action of the trial court is affirmed. The effect of the judgment should be noted. The conveyance being void as to Fruzynski, what estate passed to appellant thereby? He and his wife held the property by the entirety. Therefore she received only the wife's interest, which was a life estate in common with her husband subject to the right of survivorship. Thus, if Fruzynski had predeceased his wife appellant would have taken the fee. But when the wife died first, the right of survivorship wiped out the life estate and brought the full fee back to Fruzynski. Consequently the judgment establishes full and complete ownership in him. Dworan v. Miloszewski, 17 N.J. Super. 269 (Cty. Ct. 1952); Zanzonico v. Zanzonico, 24 N.J. Misc. 153 (Sup. Ct. 1946); Grimminger v. Alderton, 85 N.J. Eq. 425 (Ch. 1915); *283 Buttlar v. Rosenblath, 42 N.J. Eq. 651 (E. & A. 1887); 2 American Law of Property, sec. 6.6, p. 27 et seq.
We come now to the savings account in the Irvington Trust Company, which was awarded to respondent.
The funds which went into this account derived from the sale of the property at 138 Norwood Street, which was owned by respondent and his wife as tenants by the entirety. The check representing the proceeds of the sale was drawn to both of them, endorsed by Fruzynski and turned over to his wife to open the account.
According to the signature card the account was opened as a "joint and several" one and it was carried on the ledger of the bank as "Michael or Mary Fruzynski." The original deposit was $8,275.66 and there was no withdrawal until after the death of Mary.
The evidence is reasonably susceptible of but one conclusion, namely, that the original fund belonged to the husband and wife in common. In order to support the finding of complete ownership in the husband on the death of the wife, it is necessary to conclude that the words "joint and several" created a joint account with its incident of complete ownership in the survivor.
Whether a joint account was established depends upon the intention of the parties. Farris v. Farris Engineering Corp., 7 N.J. 487 (1951). If the facts indicate that such was the intention then the right of survivorship attaches and the judgment below was correct. Burlington County Trust Co. v. DiCastelcicala, 2 N.J. 214 (1949). The statute (N.J.S.A. 17:9A-217) relied upon by respondent does not create a conclusive presumption of joint tenancy even where words are used which, standing alone, would appear to do so. Stiles v. Newschwander, 140 N.J. Eq. 591 (E. & A. 1947).
In searching for the intention attention is called immediately to the absence of any express words of survivorship. Cf. Kelly v. Kelly, 134 N.J. Eq. 316 (Prerog. 1944). On the contrary, the use of "and several" in addition to "joint" *284 is some manifestation of desire to retain individual interests. And the impression is strengthened by the proof that the parties had a savings account in the Fidelity Union Trust Company which contained words of survivorship. The signature card included a stipulation that "this is a joint account * * * and in the event of death of either of the said depositors, the moneys then due thereon, shall belong to and be paid to the survivor." As already shown, the trial court declared that the balance in the Fidelity Union account belonged to respondent as the survivor, and that determination is not attacked in this appeal.
Moreover moneys in the account in question were owned by both depositors. For some reason it was not deposited in the account where the language of survivorship was used. Instead, the new, separate, and clearly distinguishable fund was established. The decedent had a number of savings accounts in her own name; so she was aware of the advantage of individual ownership. Referring again to the signature card opening the Irvington Trust Company account we note that the form bears the legend: "Individual  joint  joint and several." "Individual" and "joint" are stricken out in ink and "joint and several" retained.
Under all the circumstances in our judgment the right of survivorship did not attach to the Irvington Trust Company account. Therefore the decedent's estate is entitled to one-half of the balance existing therein at the time of her death and it was erroneous to award the whole of it to respondent. In re Perrone, 5 N.J. 514, 527 (1950); Morristown Trust Company v. Capstick, 90 N.J. Eq. 22, 25 (Ch. 1918).
Finally appellant complains of the denial of recovery on the $3,500 note signed by respondent, and of the funeral bill. The adverse determination on the note problem was predicated upon failure of proof that it represented an "original obligation."
The note is undated. The proof shows that it was given either in 1933 around the time of acquisition of the Norwood *285 Street properties or three or four years later in 1937. No one suggested that any payment had ever been made thereon. However, the statute of limitations was neither pleaded, argued nor considered. In fact, other notes dated in 1933 were conceded to be valid and outstanding obligations.
In any event, respondent admitted his signature on the instrument. He said he did not receive the money but indicated that it was given to his wife. However, in answer to a question put by the court at this point he agreed that she was handling all of their business affairs. Appellant said that the money was borrowed from her and was used in connection with the Norwood Street properties. While the evidence is not as clear as it might be, the record shows the physical note signed by respondent, facts demonstrating consideration therefor, and no substantial proof of payment. Therefore respondent's liability should have been recognized and judgment entered thereon against him.
On the subject of the funeral bill, respondent said he made the arrangements for the funeral but that appellant then arranged for a more expensive one, saying that her mother wanted it that way. The bill appears in the inheritance tax return as $1,170 but it is referred to in the testimony as $1,350.
Deceased had insurance totaling $414 and respondent said he would contribute toward the bill. He testified to contributions of $900 and denied demanding and obtaining the return of $600 of that sum. Appellant, on the other hand, asserted that Fruzynski wanted to help her toward the payment of the bill and so gave $600. Later when she refused to keep house for him he demanded its return and she said "as long as he wanted the $600 I wouldn't argue with him." So she returned it. Under the circumstances the proof falls short of establishing a liability on respondent's part to satisfy the funeral obligation.
On the whole case the judgment is affirmed except as modified in the respects indicated.