LESTER CLAYTON, RESPONDENT, v. MARY S. CLAYTON, EXECUTRIX, ETC., OF CHARLES H. CLAYTON, DECEASED, APPELLANT.

Submitted October 1, 1940—Decided January 20, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the appellant, *Theodore D. Parsons*.

For the respondent, *John J. Quinn*.

The opinion of the court was delivered by

PARKER, J. The above named respondent is the son of defendant's testator, Charles H. Clayton, deceased; the appellant-executrix is the widow of Charles H. Clayton, a second wife and the plaintiff's stepmother. The suit is on a paper purporting to be a promissory note, the genuineness of which was a matter of bitter dispute at the trial. Charles H. Clayton died on June 3d, 1938. The paper which is the

basis of the suit is on a regular promissory note form and is dated February 8th, 1934, promising to pay to Lester Clayton or order $13,600 with interest, "value received."

The will of Charles H. Clayton, which was duly proved, directs the payment of debts, &c.; leaves to his son Lester $100; devises and bequeaths all the residuary estate to the defendant-wife, and appoints her and one Edward G. Forman the executors. For some reason not here material, Mr. Forman did not qualify and letters testamentary were issued to the widow. The son Lester had filed a caveat to the will, but later withdrew the caveat, so that the will was proved without objection. Then, under date of August 1st, 1938, he presented to the executrix a claim for the face of the note with interest, the whole amounting to $17,303.73. In the affidavit attached to the claim he stated: "This note was given to me by my father on February 8th, 1934, and no interest thereon or any part of the principal thereof has been paid." The claim was rejected by the executrix and the present suit was brought in consequence thereof. At the trial the fundamental question of fact was whether or not the note was the genuine note of the decedent, and a great deal of testimony, expert and otherwise, was taken on that point. This question was left to the jury who resolved it in favor of the plaintiff, and defendant appealed.

There are forty-five grounds of appeal, but many of them are abandoned. The case is submitted on briefs, the grounds of appeal relied on being specified under the seven points made in the brief of the appellant. These grounds of appeal will be dealt with in their order.

Point I is based on Grounds Numbers 33 and 41 and both go to the proposition that the language of the affidavit annexed to the claim using the word "gave" indicated a pure gift, and that the gift of a promissory note by a father to a son with no consideration other than that of natural love and affection is without consideration which will support it in the law. Under Ground 33 the court refused the defendant's seventh request to charge, among other things, that if plaintiff was given this note by his father, he was not a holder in due course, and was not entitled to a verdict. We paraphrase

the language of the request. Ground 41 brings up request to charge No. 20 refused by the court, "If this note was a gift to Lester Clayton by his father, then your verdict must be one for the defendant of no cause for action."

The general rule on this point as we understand it is laid down in the case of *Cockrell* v. *McKenna*, 103 *N. J. L.* 166, by our Court of Errors and Appeals (at *p.* 169) as follows: "Promises or contracts made on the basis of mere love and affection, unsupported by a pecuniary or material benefit, create at most bare moral obligations, and a breach thereof presents no cause for redress by the courts;" and in 13 *C. J.* 325, § 166, where "good" and "valuable" consideration are distinguished, it is said: "A good consideration is such as that of blood, or of natural love and affection, as where a man grants an estate to a near relation," &c.; and the text goes on to say: "A promise founded on what is properly termed a good consideration is, according to the great weight of authority, a gratuitous one and unenforceable."

As regards the words in the affidavit, "This note was given to me by my father," we think it cannot be said that the use of the word "given" in that context implied a gift or a promise to pay in that sense of the term. It is common everyday language for anyone to say that he "gave his note" for something, and, as a general rule, would be understood as meaning that the note was "given" for money that was owed. So we do not think that the refusal of request No. 7 was legal error. However, when we come to request No. 20, we find the word "gift" in an obviously legal sense; and, consequently, the defendant was entitled to a charge either in the language of the request or in language which fairly covered it, if there was evidence before the jury to overcome the presumption of fact arising from the possession of a promissory note to the order of the possessor and the words "value received" in the body of the note, that there was a consideration for that promise. But we fail to find any such evidence in the case. Assuming the genuineness of the note, which was a matter of dispute and will be presently discussed, and the fact that it was in the possession of the son, we find no evidence from which it could be inferred that the note was a gift in the

legal sense, except the language of the affidavit of proof which has already been considered. There was a claim for the defense that the note was a forgery and evidence was produced to support that claim, but such evidence would naturally have no bearing whatever on the question whether the note, if genuine, was a gift: so we find no error in the refusal of these two requests.

The second point refers to Grounds of Appeal Nos. 27 and 28 which bring up rulings of the trial court permitting the plaintiff to testify to transactions between himself and the deceased. The court admitted this testimony pursuant to the exception in the Evidence act, *N. J. S. A.* 2:97-2, which now reads: "unless * *. * the representative of the decedent offers himself as a witness on his own behalf, and testifies to any transaction with or statement by his testator, * * * in which event the other party may be a witness on his own behalf as to all transactions with or statements by * * * the decedent, which are pertinent to the issue." It is objected that the testimony of such transactions was brought out on cross-examination by plaintiff's counsel: but without going into particulars, it suffices to say that there was at least one instance in which the defendant-executrix testified on direct to transactions between herself and the testator; and whether these were important or not important, the broad language of the statute seems to authorize the plaintiff in such case to go into the whole matter of his personal relations with his father.

Point III argues for error the refusal to charge the second and third requests to charge. The third may as well be disposed of at once. It reads as follows: "3. The relation between parent and child whether adult or minor, naturally leads to gratuitous conveyance of land and gifts of personalty between them, especially from the parent to the child." It is obvious that this does not involve any proposition of law, but is a mere comment. It is immaterial whether the comment is right or wrong. What is material is that the court is not required to charge matters of comment with regard to the facts of the case.

Request No. 2 reads as follows: "2. The plaintiff in this case is the son of the testator. The law presumes that

advancements of money or promises of money by a parent to a child are gifts when unexplained." Conceding for present purposes that the language of this request as regards the presumption of law is entirely correct, we find on turning to the state of the case that the language quoted above is less than half of the second request as proffered to the court. Where an appellate court is asked to deal with a refusal to charge a request, it deals with the request as a whole or not at all: and a party urging error in such refusal is not entitled to take part of the request separate from the rest, as though that part had been the whole of the request to charge.

The fourth point brings up refusals to charge requests Nos. 16, 17 and 18. Nos. 16 and 17 are pure comments on evidence and the court was not required to charge them. No. 18 combines a comment on evidence with a legal proposition. Perhaps the court would have been required to charge a legal proposition if proffered separate, but was not required to charge it separate in connection with an instruction as to what the jury might "take into consideration."

The fifth point relates to requests 13 and 15. No. 15 is a pure comment on evidence. No. 13 reads as follows: "13. It is your function and within your province to determine the validity of the note upon which suit is brought. In reaching your determination, you are not conclusively bound by the testimony of Mr. Leslie. It is within your function and province to examine the note and the other instruments offered in evidence in reaching your determination as to the genuineness of the note." We find on examination of the charge that the subject-matter of this request was fully charged by the court and, consequently, the request was duly covered though not charged in the words of the request.

The sixth point brings up several rulings on evidence and covers Grounds of Appeal Nos. 22 to 25. The defendant, Mrs. Clayton, was under cross-examination and was asked by plaintiff's counsel: "Did you write the will in question on the typewriter?" This was objected to as relating to a transaction with a decedent in his lifetime. For reasons stated above, we think that it was a proper question; but assuming that it was improper, the witness answered "I did not." Conse-

quently, even if legally erroneous, the error was harmless. The same reasoning applies to Ground No. 23, which was a question by plaintiff's counsel on cross-examination whether the will and note were not written on the same typewriter. The objection here was that the witness was not an expert on typewriting; but assuming technical error, the answer again was in the negative; so that the error, if any, was again harmless. Following this question and answer, plaintiff's counsel asked: "What makes you say that?" Again, the answer was harmless, because the witness answered: "For instance, the 'Lester here and the 't' comes way down below." Each one of these answers was favorable to the defense.

The seventh and last point is the same as those just discussed. It relates to the nineteenth ground of appeal, which is, that the trial court, over objection of defendant, permitted Mrs. Clayton to answer this question: "For the fourth time I will ask you, you knew nothing about the business transactions between father and son, did you?" In effect this question was not answered at all, because the witness said: "I could only answer that in one way. Q. Will you answer that yes or no? A. I cannot answer it yes or no." This concluded the examination on that particular point. Again it would seem that, assuming technical error in allowing the question, such answer as was made amounted to nothing and was therefore entirely harmless.

Our conclusion in the matter is that no harmful error has been shown and, in consequence, the judgment under review must be affirmed.