70 A.3d 512

ROBERT SIPKO, PLAINTIFF–APPELLANT AND CROSS–RESPON-
DENT, v. KOGER, INC., KOGER DISTRIBUTED SOLUTIONS,
INC., KOGER PROFESSIONAL SERVICES, INC., KOGER LIM-
ITED (DUBLIN), RASTISLAV SIPKO AND GEORGE SIPKO,
DEFENDANTS–RESPONDENTS AND CROSS–APPELLANTS.

Argued January 3, 2013—Decided July 2, 2013.

*Michael S. Stein* argued the cause for appellant and cross-respondent (*Pashman Stein,* attorneys; *Mr. Stein* and *Dennis T. Smith,* on the briefs).

*Paul A. Sandars, III,* argued the cause for respondents and cross-appellants (*Lum, Drasco & Positan,* attorneys; *Mr. Sandars, Bernadette H. Condon,* and *Scott E. Reiser,* on the briefs).

Justice PATTERSON delivered the opinion of the Court.

This case arises from a bitter dispute that divided a family and its successful software development business. In 2006, in the wake of a family conflict over a woman with whom he was involved, plaintiff Robert Sipko (Robert) became estranged from his father George Sipko (George) and his twin brother Rastislav Sipko (Ras). Robert then left his employment with the company that George had founded, Koger, Inc. (Koger), and signed documents memorializing a transfer of his interests in two other family-owned corporations, Koger Distributed Solutions, Inc. (KDS), and Koger Professional Services, Inc. (KPS). At a board meeting of Koger later that year, George initiated a recall of 1.5 percent of Koger stock that he had given Robert in 2000.

In 2007, Robert filed this action against George, Ras, Koger, KDS, KPS and a fourth family-owned corporation, Koger Limited (Dublin) (collectively, defendants) seeking damages and equitable relief. Defendants filed a counterclaim asserting several causes of action. This appeal arises from two determinations made by the trial court following a bench trial: its ruling that George's gift of 1.5 percent of the stock in Koger was unconditional and therefore irrevocable, and its ruling that Robert's transfer of his stock in KDS and KPS was voluntary and legally binding. The Appellate

Division reversed both trial court findings. The panel held that George's gift of Koger stock to Robert was conditioned on Robert's continued employment in the family business and that Robert's transfer of his stock in KDS and KPS was void for lack of consideration.

We affirm in part and reverse in part the Appellate Division's determination. We reverse the panel's order reversing the trial court's determination with respect to George's 2000 gift of Koger stock to Robert and reinstate the trial court's finding that the gift was voluntary and irrevocable. We affirm and modify the panel's decision regarding Robert's transfer of KDS and KPS stock. We hold that, in accordance with their terms, the KDS and KPS stock transfers required consideration, and that no consideration was given to Robert in exchange for his surrender of the stock. We therefore reinstate Robert's claim seeking an accounting of the revenues, distributions, assets and liabilities (Count One), his claims requesting appointment of a provisional director or special fiscal agent to protect his interests (Counts Two and Three), his claim requesting injunctive relief (Count Four), his claims requesting dissolution or the forced sale of his interests, pursuant to *N.J.S.A.* 14A:12–7, as an oppressed minority shareholder (Counts Five and Six), and his claim seeking compensatory and punitive damages for breaches of fiduciary duty by George and Ras (Count Seven), insofar as those claims relate to KDS and KPS. We remand to the trial court for consideration of those claims and a determination of the appropriate remedy.[1]

## I.

George, an experienced computer programmer, emigrated from Slovakia to the United States in 1990. After several years working in the programming field, George decided to start his own

[1] Robert's amended complaint also requested partition of his interest in two properties owned by the family (Counts Eight and Nine). Those claims have been adjudicated below and are not the subject of this appeal.

business. On December 15, 1994, George and an associate with business expertise, Paul Piringer (Piringer), merged two preexisting entities into Koger, a New Jersey "S" corporation.[2] Initially, George and Piringer were Koger's only employees, with George developing software and Piringer handling marketing and other business functions for the company. At Piringer's suggestion, the company focused its marketing on one customer base, the hedge fund industry. Piringer's role in Koger ended in late 1999 or early 2000, when George bought out his interest in Koger. George involved his sons in Koger's operations almost from the company's inception. Robert joined Koger in 1997, left in 1998 and returned in 2000. Ras joined the company in 1998.

After a modest beginning, Koger began to attract clients. By 2000, Koger had five employees: George, Ras and Robert, as well as the manager of the company's Irish operations, Koger Limited (Dublin), and a software engineer based in Slovakia. Two years later, the company had between ten and fourteen employees and had expanded its client base within the hedge fund industry.

On an unspecified date in or around 2000, when Ras and Robert were actively involved in Koger and the business experienced rapid growth, George made a gift of 1.5 percent of Koger stock to each of his sons. The gift was not documented in any writing.

On June 5, 2002, KDS was incorporated as a New Jersey "S" Corporation, with Ras and Robert each owning fifty percent of the stock. On December 15, 2004, KPS was incorporated as a New Jersey "S" Corporation, and again, fifty percent of the stock was given to each of the Sipko sons. According to the trial testimony of George and Ras, George created KDS and KPS as a component of his estate planning. In addition, KDS and KPS were designed to execute contracts for Koger's products, thereby shielding Koger

---

[2] An "S" Corporation is a small business corporation that elects to pass corporate income, losses, deductions and credits through to their shareholders for federal tax purposes. 26 *U.S.C.A.* §§ 1361–63. The shareholders must then report the income or loss on their own individual income tax returns. 26 *U.S.C.A.* § 1363(b).

from liability, but had no independent function, employees or office space. In his testimony, Robert agreed that KDS and KPS were created for estate planning and liability purposes but testified that the two companies were also formed to develop software.

KDS and KPS reported substantial gross and net income in their first few years.[3] All profits from the three companies—Koger, KDS and KPS—were shared by George, Ras and Robert at George's direction, with George receiving fifty percent, and each son receiving twenty-five percent. This arrangement was not set forth in any writing. In addition, George, Ras and Robert used their corporate credit cards for a litany of personal expenses.

The family and its businesses invested in real estate, including a house in Mahwah, in which the entire family lived, that was fifty percent owned by George and twenty-five percent owned by each of the sons, and a separate undeveloped property in Mahwah. In 2003, Koger spent between $400,000 and $686,000 in profit, which would otherwise have been subject to the normal allocation (fifty percent to George and twenty-five percent to each son), on the "Koger Building" in Slovakia, which housed the company's team of Slovak engineers. According to Robert, he and Ras understood that they would eventually inherit the building.

In 2004, unbeknownst to his parents, Robert began dating a California resident whom he had met on a vacation. In the fall of 2005, Robert disclosed the relationship to his mother. She was upset that Robert was romantically involved with a woman who

---

[3] KDS reported gross income of $38,413.15 and net income of $10,912.62 in 2002. While the tax records are incomplete, KDS earned at least $70,000.00 in profit in 2003; gross income of $219,709.12 and net income of $37,730.25 in 2004; gross income of $447,748.65 and net income of $60,400.84 in 2005; and gross income of $455,924.95 and net income of $5,762.82 in 2006. KPS reported no income or losses in 2004 and net loss of $18,865.00 in 2005. In 2006, however, KPS experienced dramatic growth in its income, reporting gross income of $5,100,000, of which $2,500,000 was paid to Koger for unidentified "professional services," and net income of $1,100,000. In 2007, KPS had over $9,000,000 in gross income, and, after it paid $3,000,000 in unspecified professional services to Koger, KPS reported net income of $246,000.

was older than him, was not Slovak, was married to her third husband and was the mother of three children. According to Robert, on February 3, 2006, George learned from his wife about Robert's relationship with the woman and became enraged. In an account vehemently denied by George, Robert testified that George tried to hit him with a hockey stick and threatened to kill him. According to Robert, during this heated encounter with his father, George threatened to "drive [Robert's] head through the kitchen table" unless Robert signed certain documents presented to him by George. George and Ras deny Robert's account of the meeting and contend that any document signed by Robert was executed voluntarily.

Although it is uncertain how many documents were signed by Robert, the record contains two documents bearing his signature, one purporting to transfer Robert's interest in KDS, and the other purporting to transfer his interest in KPS. The first of the two documents, bearing the date "02/03/2006," provides:

> For Value Received, _____ hereby sell, assign and transfer unto … *Koger Distributed Solutions, Inc.* Shares Represented by the within Certificate and do hereby irrevocably constitute and appoint _____ Attorney to transfer the said Shares on the books of the within named Corporation and with the full power of substitution in the premises.

Robert admits that he signed this document but contends that he did so under duress. George and Ras contend that this document was voluntarily signed by Robert because it was clear that as of February 3, 2006, Robert would leave Koger.

The second document, similarly reciting "[f]or Value Received," used the same language to transfer KPS stock, and contained similar omissions, but was dated "12/31/04." George and Ras explained this date by identifying this agreement as a component of a 2004 transaction that was never completed. In contrast, Robert testified that he did not sign this document on December 31, 2004, but on February 3, 2006, and claims that it was backdated.

Notwithstanding the family turmoil, George, Ras and Robert continued to live and work together for approximately two weeks

after the February 3, 2006 meeting between George and Robert. By Robert's account, on February 18, 2006, George and Ras told him that unless he terminated his relationship with the woman at issue, he would be excluded from his home, lose his job and be estranged from his family. George and Ras deny that any such confrontation occurred. Robert resigned from Koger on March 10, 2006, effective three days later. He later married the woman who was at the center of the dispute and remains estranged from his family.

On December 11, 2006, George and Ras attended a Koger board meeting. At that meeting, George conducted a purported recall of Robert's 1.5 percent share of Koger stock, effective on March 10, 2006, the day Robert resigned.

## II.

Robert filed this action on November 13, 2007. He alleged that he was an oppressed shareholder within the meaning of *N.J.S.A.* 14A:12-7. In addition to compensatory and punitive damages, Robert sought injunctive relief including the appointment of a provisional director or special fiscal agent for Koger, KDS, KPS and Koger Limited (Dublin), a court-ordered buyout of Robert's stock in Koger, KDS and KPS, dissolution of all Koger entities, and a court-ordered sale of real estate he purchased with his father and brother. Defendants filed a counterclaim in which they alleged that Robert is liable for conversion, unjust enrichment and breach of fiduciary duty by virtue of his payment of personal expenses with corporate credit cards.

The trial court conducted a seven-day bench trial beginning on December 15, 2008, and considered the testimony of Robert, George, Ras, and the corporate accountant, as well as valuation experts for both parties. On January 12, 2009, the trial court issued a written opinion. The court found that George and Ras disapproved of the woman with whom Robert was involved because of her marriages and children, not her nationality or religion. The court also found that the family's rejection of his future

wife, as well as differences with George and Ras regarding management decisions, prompted Robert to voluntarily terminate his employment with Koger. Finding Robert's testimony to be more compelling than that of George and Ras with respect to George's gift of 1.5 percent of Koger stock to Robert, the trial court held that the gift was unconditional and effective. Nonetheless, the court declined to rule that Robert was an oppressed shareholder, pursuant to *N.J.S.A.* 14A:12–7(1)(c), and accordingly, did not order the buyout of Robert's Koger stock. By virtue of the trial court's order, Robert remained a 1.5 percent shareholder of Koger.

With respect to KDS and KPS, the trial court concurred with the testimony of George, Ras and Robert that the two companies were created for estate planning and avoidance of liability, but rejected Robert's testimony that the companies had a third purpose, to develop software. The trial court found that KDS and KPS had no value as distinct companies and that the contracts in those companies' names were, in reality, Koger contracts dependent upon the licensing of Koger products. The trial court determined that KDS and KPS were nothing more than conduits for the distribution of Koger's revenues. The trial court concluded that Robert, recognizing that his interests in KDS and KPS had no value, voluntarily surrendered those interests, probably in February 2006.[4]

All parties appealed. The Appellate Division reversed the trial court's determination regarding George's gift of 1.5 percent of Koger stock. It held that the testimony of George and Ras that the gift was conditional was uncontradicted by Robert, who conceded that all three family members anticipated at the time of the gift that Robert would continue to work at Koger. Citing another panel's discussion of uncontradicted evidence in *CPC Internation-*

---

[4] The trial court also ordered George and Ras to buy out Robert's share of family-owned real estate in Mahwah, and it dismissed defendants' counterclaim against Robert. Those rulings are not before the Court.

*al, Inc. v. Hartford Accident & Indemnity Co.,* 316 *N.J.Super.* 351, 375, 720 *A.*2d 408 (App.Div.1998), *certif. denied,* 158 *N.J.* 73–74, 726 *A.*2d 937 (1999), the panel concluded that the testimony of George and Ras contained no inherent improbabilities or contradictions that might justify the trial court's rejection of it. Accordingly, the panel rejected the trial court's finding that George's gift to Robert was unconditional, deeming it unsupported by the evidence.

The panel also reversed the trial court's decision regarding Robert's surrender of his holdings in KDS and KPS. It held that both transactions lacked consideration because Robert received nothing of value in exchange for the transfer of his interest in the two companies. The panel rejected defendants' contention that the elimination of Robert's duties and potential liabilities as the companies' owner and employer satisfied the requirement of consideration because Robert resigned as an employee in a separate transaction, following his surrender of stock. The panel concurred with the trial court's determination that Robert was not an oppressed shareholder and affirmed the trial court's denial of Robert's application for a buyout of his stock. It affirmed the trial court's determination regarding the other issues tried, which are not before the Court.

We granted Robert's petition for certification, limited to the question of whether George's gift of Koger stock was conditioned on Robert's continued employment at Koger. 210 *N.J.* 24, 40 *A.*3d 55 (2012); 208 *N.J.* 598, 34 *A.*3d 780 (2011). We also granted defendants' cross-petition for certification, limited to whether Robert retains his holdings in KDS and KPS. 210 *N.J.* 25, 40 *A.*3d 55 (2012).

### III.

Robert contends that George's gift of 1.5 percent of Koger stock was unconditional and therefore became final. He urges the Court to affirm the factual findings of the trial court, which were premised upon the trial court's evaluation of the credibility of

witnesses, and contends that the Appellate Division's reliance on the lack of "inherent improbabilities" in the testimony of George and Ras ignored the interest of these defendants in the outcome of this case.

Defendants urge the Court to affirm the Appellate Division's determination that there was insufficient evidence to support the trial court's conclusion that George's gift of Koger stock to Robert was unconditional. They contend that the gift was conditioned on Robert's continued employment at Koger. They assert that the Appellate Division's determination is supported by Robert's admission that, when the gift was made, he intended to work at Koger for the rest of his life.

With respect to the issue of Robert's KDS and KPS holdings, raised by defendants' cross-petition, defendants assert that Robert executed two separate surrenders of his interests: a transfer of his interest in KPS on December 31, 2004, and a transfer of his interest in KDS on February 3, 2006. Defendants argue that there was sufficient consideration for both transactions because Robert was relieved of his obligations as an owner of both companies and was no longer exposed to potential liability as a consequence of his interest in them. Defendants contend that the Appellate Division's holding regarding the ownership of KDS and KPS was inconsistent with the panel's affirmance of the trial court's finding that Robert was not an oppressed shareholder.

Robert counters that, as the trial court and Appellate Division found, the transfers of KDS and KPS stock required consideration, as reflected in the language "For Value Received" in each transfer document. He argues that the Appellate Division properly found that his transfers of KDS and KPS stock were void for lack of consideration. Robert further contends that there was no inconsistency between the Appellate Division's determination that he is not an oppressed shareholder and its holding regarding KDS and KPS.

## IV.

The trial court's finding that George's gift of 1.5 percent of Koger's stock to Robert was unconditional is entitled to substantial deference. Reviewing a trial court's findings in a non-jury trial, the appellate court " 'ponders whether ... there is substantial evidence in support of the trial judge's findings and conclusions.' " *Seidman v. Clifton Sav. Bank, S.L.A.,* 205 *N.J.* 150, 169, 14 *A.*3d 36 (2011) (quoting *In re Trust Created by Agreement Dated Dec. 20, 1961, ex rel. Johnson,* 194 *N.J.* 276, 284, 944 *A.*2d 588 (2008)). "Deference [to factual findings] is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.' " *Cesare v. Cesare,* 154 *N.J.* 394, 412, 713 *A.*2d 390 (1998) (quoting *In re Return of Weapons to J.W.D.,* 149 *N.J.* 108, 117, 693 *A.*2d 92 (1997)).

To demonstrate a valid and irrevocable gift, a donee must establish four elements:

First, the donor must perform some act constituting the actual or symbolic delivery of the subject matter of the gift. Second, the donor must possess the intent to give. Third, the donee must accept the gift. Our cases also recognize an additional element, the relinquishment by the donor "of ownership and dominion over the subject matter of the gift."

[*Pascale v. Pascale,* 113 *N.J.* 20, 29, 549 *A.*2d 782 (1988) (citation omitted) (quoting *In re Dodge,* 50 *N.J.* 192, 216, 234 *A.*2d 65 (1967)); *accord Farris v. Farris Eng'g. Corp.,* 7 *N.J.* 487, 500–01, 81 *A.*2d 731 (1951); *Farrow v. Farrow,* 72 *N.J. Eq.* 421, 423, 65 *A.* 1009 (E. & A.1907); *Kirkpatrick v. Kirkpatrick,* 106 *N.J. Eq.* 391, 398, 151 *A.* 48 (Ch.1930); *Kelly v. Kelly,* 134 *N.J. Eq.* 316, 319, 35 *A.*2d 618, *aff'd on reh'g,* 135 *N.J. Eq.* 75, 37 *A.*2d 288 (Prerog.Ct.1944).]

"The proof of these essential elements should be clear, cogent and persuasive." *Farris, supra,* 7 *N.J.* at 501, 81 *A.*2d 731 (citing *Farrow, supra,* 72 *N.J. Eq.* at 423, 65 *A.* 1009; *Kelly, supra,* 134 *N.J. Eq.* at 319–20, 35 *A.*2d 618).

The element of intent is the focus of our inquiry. When the evidence establishes that the gift was premised upon the fulfillment of a condition by the donee, the gift is conditional; if the donee performs the condition, the gift becomes his or her property, but if the donee fails to perform the condition, the gift must be returned. *See, e.g., Winer v. Winer,* 241 *N.J.Super.* 510,

528, 575 *A*.2d 518 (App.Div.1990) (gift of engagement ring became final and irrevocable upon marriage); *Aronow v. Silver,* 223 *N.J.Super.* 344, 350, 538 *A*.2d 851 (Ch.Div.1987) (gift of engagement ring was conditional and termination of relationship prior to marriage required its return); *Tami v. Pikowitz,* 138 *N.J. Eq.* 410, 414, 48 *A*.2d 221 (Ch.Div.1946) (gift of vehicle was conditional because donor intended a bailment, not an unconditional transfer of ownership). If the gift is "absolute and made voluntarily with a full understanding of its effect[, it] cannot be revoked by the donor, either by his act alone or with the aid of a judicial tribunal." *Hill v. Warner, Berman & Spitz, P.A.,* 197 *N.J.Super.* 152, 164, 484 *A*.2d 344 (App.Div.1984) (citing *First Nat'l Bank of Perth Amboy v. Keller,* 122 *N.J. Eq.* 481, 483, 194 *A.* 554 (E. & A.1937)).

The trial court properly applied these principles to the evidence. It focused upon the donor's expression of intent and the circumstances of his gift, and found no credible evidence that George imposed a condition upon his gift. It considered the testimony of George and Ras that George's gift was subject to a condition of his sons' continued employment in the family business and rejected that testimony as incredible.

We disagree with the Appellate Division's conclusion that George and Ras presented uncontradicted evidence of a condition on George's gifts to his sons. George's gift was not documented in any writing; indeed, it is uncertain exactly when the gift was made. There is no evidence that George imposed a condition that Robert continue to work at Koger, or any other condition, on his gift. Neither George nor Ras identified a specific conversation in which George articulated an intent to impose a condition on his gift of stock to each son; they provided nothing more than conclusory statements that such a condition was imposed.

Robert refuted George's and Ras' testimony that a condition was imposed. He testified at trial that the family never discussed what would occur if any family member wanted to leave any of the Koger entities. This statement contradicts George's and Ras' contentions that the donor and recipients understood that the gift

of Koger stock would be revoked in the event of such a departure. Robert's observation—that it was always assumed, especially by George, that he, George and Ras would continue to work together—does not define the terms of the gift. The family members' shared anticipation that their business would remain intact is not tantamount to the imposition of a condition on the gifts at issue, given the parties' failure to discuss or document such a condition.

We therefore disagree with the Appellate Division's conclusions that defendants presented uncontradicted evidence that George's gift was subject to a condition of continued employment, and that defendants' evidence must therefore be accepted.[5] The trial court's finding that George's gift of a 1.5 percent interest in Koger was unconditional and irrevocable was based upon substantial evidence. *See Seidman, supra,* 205 *N.J.* at 169, 14 *A.*3d 36; *Rova Farms Resort, Inc. v. Investors Ins. Co.,* 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974).

Accordingly, we reverse the Appellate Division's determination on the issue of George's gift to Robert of 1.5 percent of Koger stock. We concur with the trial court's conclusion that George's December 11, 2006 revocation of that gift had no effect. Given the trial court's ruling that Robert was not an oppressed shareholder of Koger within the meaning of *N.J.S.A.* 14A:12–7(1), and the Appellate Division's affirmance of that ruling, our holding does not compel the dissolution of Koger or a buyout of Robert's interest in the company. Robert's remedy, with respect to Koger, is limited to the reinstatement of his 1.5 percent interest in the company.

## V.

We also review the Appellate Division's reversal of the trial court's determination regarding Robert's transfer of his fifty-

---

[5] We do not reach the issue of whether the standard of review stated by the Appellate Division in *CPC International, supra,* 316 *N.J.Super.* at 375, 720 *A.*2d 408, and applied here, would be the appropriate standard of review in a case in which one party's evidence on an issue is uncontradicted. This is not such a case.

percent holdings in KDS and KPS. The parties agree that Robert surrendered his stock in these two entities. They dispute whether the stock transfers are nonetheless void for lack of consideration.[6]

■ The trial court's findings with respect to this issue—that the transfers were made voluntarily and knowingly, that KDS and KPS were created for estate planning purposes and avoidance of liability, that the entities had no value as distinct entities and that Robert received no consideration in return—are entitled to substantial deference. *Seidman, supra,* 205 *N.J.* at 169, 14 *A.*3d 36; *Rova Farms, supra,* 65 *N.J.* at 484, 323 *A.*2d 495. The trial court's legal determinations, in contrast, are reviewed de novo. *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

We first consider the trial court's finding that KDS and KPS lacked value. We concur with the Appellate Division's determination that this finding was not supported by the evidence. For 2006, indisputably the year of the KDS transaction and the year in which the trial court found that the KPS transaction probably took place, both companies had substantial revenue. *See supra,* n. 3. At trial, Robert offered the testimony of a valuation expert who valued KDS at $1,547,278 and KPS at $34,973,236, as of the date of commencement of the present litigation. That expert opinion was unrebutted by defendants, who instructed their valuation expert not to separately calculate the value of the two companies. Although the remainder of the trial court's findings regarding KDS and KPS were firmly grounded in the evidence, even under

---

[6] At trial, Robert asserted two other arguments in support of his contention that his surrender of his KDS and KPS stock was void: the transactions were executed under duress, and the December 31, 2004 date on the writing memorializing the transfer of Robert's KPS stock was fabricated. The trial court rejected Robert's duress theory, and while it concluded that the KPS transfer document was probably backdated, it declined to void the transaction on that basis. While Robert continues to maintain that he was under duress, he does not advance either theory before this Court as a basis for voiding his transfer of KDS and KPS stock, and our review of the issue is accordingly limited to the question of consideration.

the deferential standard that governs our review, the trial court's conclusion that KDS and KPS were devoid of value cannot be sustained. Instead, we conclude Robert's interests in KDS and KPS clearly had value, which was not quantified by the factfinder.

Next, we review an issue that was not reached by the trial court, the existence of consideration for Robert's transfer of his interests in KDS and KPS. Consideration is " 'a bargained-for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation.' " *Martindale v. Sandvik, Inc.*, 173 *N.J.* 76, 87, 800 *A.*2d 872 (2002) (quoting *Shebar v. Sanyo Bus. Sys. Corp.*, 111 *N.J.* 276, 289, 544 *A.*2d 377 (1988)). In general, contracts are enforceable only if they are supported by consideration. *Cont'l. Bank of Pa. v. Barclay Riding Acad., Inc.*, 93 *N.J.* 153, 170, 459 *A.*2d 1163 (1983) (citing *Friedman v. Tappan Dev. Corp.*, 22 *N.J.* 523, 533, 126 *A.*2d 646 (1956), *cert. denied*, 464 *U.S.* 994, 104 *S.Ct.* 488, 78 *L.Ed.*2d 684 (1983); 1 *Corbin on Contracts* § 110 (1963)); 1 *Corbin on Contracts* § 5.2 (Perillo ed. 1993). " 'If the consideration requirement is met, there is no additional requirement of gain or benefit to the promisor, loss or detriment to the promisee, equivalence in the values exchanged, or mutuality of obligation.' " *Martindale, supra*, 173 *N.J.* at 87, 800 *A.*2d 872 (quoting *Shebar, supra*, 111 *N.J.* at 289, 544 *A.*2d 377).

The phrase "For Value Received" appears on each of the two writings that memorialize Robert's surrender of his interests in KDS and KPS. That phrase commonly denotes that consideration has been delivered in connection with the transaction memorialized, *Black's Law Dictionary* 1692 (9th ed. 2009) (defining "value received"); however, courts often seek additional evidence of consideration, *First Nat'l Bank of Minotola v. Keown*, 9 *N.J. Misc.* 892, 894, 156 *A.* 3 (N.J.1930) (holding evidence presented rebutted presumption of consideration); *see also Clayton v. Clayton*, 125 *N.J.L.* 537, 539, 17 *A.*2d 496 (Sup.Ct.1941) (finding evidence verified consideration for promissory note), *appeal dismissed*, 127 *N.J.L.* 605, 23 *A.*2d 560 (E. & A.1942); *Ward v. Bush*,

59 *N.J. Eq.* 144, 145–46, 45 *A.* 534 (Ch.1900) (finding the phrase "raise[s] the presumption of a legal consideration" in a will). Here, the parties concur that consideration was required for Robert's transfer of his holdings in KDS and KPS to be effective; they dispute whether there was consideration in this case. Robert contends that he received no consideration for either transaction. Defendants contend that Robert received a valuable benefit by virtue of his surrender of his interest in each company: he no longer bore the burdens, or risked the liability, of serving as an employee and owner of KDS and KPS.

Like the Appellate Division, we reject as implausible defendants' contention that Robert's relinquishment of the responsibilities and risks of his ownership of these entities met the requirement for consideration. Robert resigned as an employee of the entities in a separate transaction that followed the transfer of his KDS and KPS stock. Moreover, defendants' argument with respect to this issue is undermined by their other contention, rejected by the trial court, but maintained on appeal—that Robert surrendered his interest in KPS on December 31, 2004, not February 3, 2006. Defendants do not suggest, and the record does not demonstrate, that any transfer of money or other value constituted consideration for Robert's transfer of his interests in KDS and KPS. Accordingly, we concur with the Appellate Division's conclusion that substantial credible evidence supports a finding the transactions lacked consideration, and are therefore void. We hold that Robert did not relinquish his interests in KDS or KPS.

■ The task of fashioning an appropriate remedy is complicated by the procedural posture of this case. The trial court found that Robert's transfer of his interests in KDS and KPS was based on his knowledge that they lacked value, and the transfer was therefore effective. It did not separately analyze Robert's claims relating to the two companies. Instead, without differentiating among Koger, KDS and KPS, the trial court generally found that the defendants did not act fraudulently or illegally, misman-

age the corporation, abuse their authority as officers and directors, act oppressively or unfairly toward Robert as a minority shareholder or thwart Robert's reasonable expectations in violation of *N.J.S.A.* 14A:12–7(1)(c).[7] The court accordingly dismissed Robert's claims, including his request to void the transfers for lack of consideration (Count Ten), his assertion that George and Ras breached their fiduciary duties (Count Seven) and his demand for an accounting of income streams and disbursements relating to KDS and KPS during the relevant years to which he may be entitled recompense (Count One).

Our ruling that the transfer of Robert's interests in KDS and KPS is void requires the trial court to reinstate all of Robert's enumerated claims as they relate to KDS and KPS, and to consider those claims on their merits. *See In re M.R.*, 135 *N.J.* 155, 171–72, 638 *A.*2d 1274 (1994) (remanding to reconsider custody in light of burden of proof); *Miller v. Miller*, 97 *N.J.* 154, 171, 478 *A.*2d 351 (1984) (remanding to reconsider financial arrangements, including equitable distribution based on alimony and child support); *Colonial Oaks W., Inc. v. E. Brunswick*, 61 *N.J.* 560, 574–75, 296 *A.*2d 653 (1972) (remanding to reconsider reasonableness of fees in light of payment of fees at other locations).

Although the determination of the trial court and the Appellate Division that Robert is not an oppressed shareholder within the meaning of *N.J.S.A.* 14A:12–7(1)(c) remains in effect, other remedies may be available in this case. As this court recognized in *Brenner v. Berkowitz*, 134 *N.J.* 488, 506–07, 634 *A.*2d 1019 (1993), a minority shareholder's failure to demonstrate conduct that rises to the level of oppression does not necessarily deprive him of a

---

7 "Note that for the purposes of this statute, each of two fifty percent shareholders is a 'minority' shareholder. Because a fifty percent shareholder cannot direct outcomes as a fifty-one percent shareholder can, he does not have 'control' of the corporation." *Balsamides v. Protameen Chems., Inc.*, 160 *N.J.* 352, 371 n. 7, 734 *A.*2d 721 (1999) (citing *Balsamides v. Perle*, 313 *N.J.Super.* 7, 16, 712 *A.*2d 673 (App.Div.1998); *Bonavita v. Corbo*, 300 *N.J.Super.* 179, 187–89, 692 *A.*2d 119 (Ch.Div.1996)).

remedy. There, the Court considered the claim of a minority shareholder of a family-owned furniture business who accused the majority shareholders of fraud, illegality, mismanagement and oppression. *Ibid.* The Court rejected the defendants' argument that fraudulent and illegal acts do not violate *N.J.S.A.* 14A:12–7(1)(c) "unless the plaintiff also can show that such acts oppress the minority shareholder." *Brenner, supra,* 134 *N.J.* at 492, 634 *A.*2d 1019. Instead, the Court held that because "[i]llegality and fraud may also frustrate a shareholder's reasonable expectations for a company but nonetheless not qualify as oppression," such conduct may be actionable under the statute even if the minority shareholder is not deemed to be oppressed. *Id.* at 506–07, 634 *A.*2d 1019. Declining to find a per se violation of *N.J.S.A.* 14A:12–7(1)(c) based upon a determination of illegality or fraud, the Court noted that the statute affords to minority shareholders a range of individualized remedies in the presence of appropriate proofs:

[I]n addition to demonstrating fraudulent or illegal conduct, mismanagement, or abuse of authority, *or* oppressive or unfair conduct, a plaintiff must also demonstrate a nexus between that misconduct and the minority shareholder or her interest in the corporation. The remedies that a court will apply will logically depend on the harm to the minority shareholder or her interest in the corporation. [*Brenner, supra,* 134 *N.J.* at 508, 634 *A.*2d 1019.]

The Court emphasized that *N.J.S.A.* 14A:12–7(1)(c) does not limit the equitable power of the courts to fashion remedies appropriate to an individual case. *Brenner, supra,* 134 *N.J.* at 512, 514, 634 *A.*2d 1019. It commented that "the enactment of *N.J.S.A.* 14A:12–7 was not intended to supersede the inherent common law power of the Chancery Division to achieve equity." *Id.* at 512, 634 *A.*2d 1019. The Court also enumerated a broad range of remedies available to courts adjudicating disputes over closely held corporations, including an accounting. *Id.* at 514–15, 634 *A.*2d 1019. One or more of those remedies may be appropriate to the parties' dispute about Robert's interests in KDS and KPS.

We remand to the trial court for determination of Robert's claims regarding KDS and KPS and for consideration of what, if any, remedy is appropriate. Consistent with *N.J.S.A.* 14A:12–7(1)(c) and the principles stated in *Brenner,* the trial court has

broad discretion to consider such statutory and equitable remedies as may be appropriate to this setting, including but not limited to an accounting of the income and expenditures of KDS and KPS.

## VI.

The judgment of the Appellate Division is affirmed in part and reversed in part, and the matter is remanded to the trial court for proceedings consistent with this opinion.

*For affirmance in part/reversal in part/remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, PATTERSON and Judge RODRÍGUEZ (temporarily assigned)—5.

*Opposed*—None.

*Not participating*—Justice HOENS and Judge CUFF—2.