**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3029-23

SCHUYLER MARTIN, NAN
MARTIN and JOHN A.
PARMIGIANI,

     Plaintiffs-Appellants,

v.

SOUTHGATE CENTER FOUR
LLC, a New Jersey limited liability
company, MORRISTOWN MOB I
LLC, a Delaware limited liability
company, MORRISTOWN MOB II
LLC, a Delaware limited liability
company, MORRISTOWN MOB III
LLC, a Delaware limited liability
company, MORRISTOWN MOB IV
LLC, a Delaware limited liability
company, HSRE AHS MORRISTOWN
435 LLC, a Delaware limited liability
company, HSRE AHS MORRISTOWN
465 LLC, a Delaware limited liability
company, HSRE AHS MORRISTOWN
475 LLC, a Delaware limited liability
company, HSRE AHS MORRISTOWN
IV LLC, a Delaware limited liability
company,

     Defendants-Respondents.

_____

Argued March 25, 2025 – Decided August 7, 2025

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1604-22.

John D. North argued the cause for appellants (Greenbaum, Rowe, Smith & Davis LLP, attorneys; John D. North, of counsel and on the briefs; Steven Firkser, on the briefs).

Anthony R. Todaro argued the cause for respondents Southgate Center Four LLC (Faegre Drinker Biddle & Reath LLP, attorneys; John P. Mitchell and Anthony R. Todaro, on the brief).

Elissa Glasband argued the cause for respondents HSRE AHS Morristown 435, 465, 475, and IV LLC (DLA Piper LLP, attorneys; Elissa Glasband and Elizabeth J. Jonas, on the brief).

C. John DeSimone, III, argued the cause for respondents Morristown MOB I-IV, LLCs (Day Pitney LLP, attorneys; C. John DeSimone, III, of counsel and on the brief; Stephen R. Catanzaro, on the brief).

PER CURIAM

This matter involves the lessors' appeal of three Law Division orders dismissing their complaint seeking rent payments from their lessee and its successors in interest for the use of dedicated public roads that were constructed to enable the development of a commercial office park owned by the lessee and

2

its successors in interest. Two orders granted the successors in interest's <u>Rule</u> 4:6-2(e) motions in lieu of an answer to dismiss the complaint for failure to state a claim. The other order was a judgment dismissing the complaint against the lessee following a bench trial.

Considering the record, the parties' arguments, and the applicable law, our decision is split. As to the <u>Rule</u> 4:6-2(e) orders, we affirm the dismissal of the claims for breach of contract and breach of the covenant of good faith and fair dealing but reverse the dismissal of claims for unjust enrichment and remand for trial. As to the order of judgment, we reverse and remand to the trial court to determine damages for unjust enrichment.

I

In 1977, John and Margaret Parmigiani (collectively Parmigianis) owned land in Morris Township adjacent to property owned by Anders Billing. Billing sought to buy part of the Parmigianis' property to construct two roads through the property that would provide access from Route I-287 to commercial office buildings, Southgate Corporate Center Properties (Corporate Center), which Billing planned to build on his property. When a purchase price could not be agreed upon, a lease agreement was reached on December 7, 1977, requiring Billing to pay rent for ninety-nine years to the Parmigianis to construct the roads

3

on their property. It was agreed that the roads, Southgate Parkway and a connecting road to pre-existing public road Laura Lane, would be built following "municipal specifications and dedicated to the Township of Morris" as the Township's condition for approving Billing's development. The Parmigianis also agreed not to develop the remainder of their property adjacent to Billings' land for ninety-nine years.

Relevant to this dispute, the lease identifying Billing as tenant and Parmigianis as landlord, authorized the assignment of the lease as follows:

Section 9.01:

The Tenant or its successive assignees, may assign, pledge, mortgage or transfer all or any part of this lease or its leasehold or sublet all or portions of the demised premises, without the consent of the Landlord.

Each assignee shall assume this lease and shall be liable for the payment of the rentals required hereunder. . . . No assignment shall be valid unless the assignee shall deliver to Landlord an instrument in recordable form, or a counterpart thereof, which contains a covenant of assumption by the assignee, as aforesaid, and a signed counterpart of such assignment is delivered to the Landlord.

The lease also provides it shall run with the land as follows:

Section 23.01:

The covenants, agreements, terms, provisions and conditions of this [L]ease shall be binding upon and

4

> inure to the benefit of the heirs, administrators and assigns of the Landlord, . . . and the successors and assigns of the Tenant. <u>All covenants and obligations of the Landlord</u> hereunder shall run with the land and shall be binding on each successive Landlord.

[(Emphasis added).]

The parties' Memorandum of the Lease, dated the same day as the lease, was recorded in the Morris County Clerk's office in early 1978. However, "[t]he Memorandum of Lease was only recorded in the title to the [p]laintiff [p]roperties; not the Southgate Corporate Center."

At some point in time, plaintiffs Schuyler Martin, Nan Martin, and John A. Parmigiani became successors in interest to the Parmigianis. Billing eventually sold Southgate Corporate Center, and the lease was assigned to three sequential owners of Southgate Corporate Center who became tenants under the lease.

In 2008, Southgate Center Four (SCF) and its affiliates bought Southgate Corporate Center and entered into an Assignment and Assumption Agreement of the Ground Lease with Massachusetts Mutual Life Insurance Company, the prior assignee under the lease. At all times during its ownership, SCF made all its rental payments in accordance with the lease.

After SCF sold Southgate Corporate Center to HSRE AHS Morristown 435 LLC, HSRE AHS Morristown 465 LLC, HSRE AHS Morristown 475 LLC, and HSRE AHS Morristown IV LLC (collectively HSRE) in August 2018, SCF did not make any rent payments pursuant to the lease. The parties did not enter into a written recordable document assigning or assuming the lease. Yet, about a month thereafter, HSRE made a rent payment under the lease for "the prorated rental amount of $17,546.04." Later, in March 2019, HSRE "made the semi-annual payment of rent due pursuant to the [l]ease in the amount of $26,250.00." HSRE did not make any further rent payments.

In July 2021, HSRE conveyed Southgate Corporate Center to Morristown MOB I LLC, Morristown MOB II LLC, Morristown MOB III LLC, and Morristown MOB IV LLC (collectively MOB). The parties did not enter into a written recordable document assigning or assuming the lease, and MOB did not pay plaintiffs any rent payments under the lease.

For about forty years, rent payments under the lease were made until HRSE stopped making payments. After plaintiffs' efforts to collect outstanding rental payments were unsuccessful, they sued SCF, HSRE, and MOB (collectively defendants). As to SCF, plaintiffs alleged breach of contract and breach of the covenant of good faith and fair dealing. As to the HSRE and MOB,

6

A-3029-23

plaintiffs alledged breach of contract, unjust enrichment, and breach of the covenant of good faith and fair dealing.

In lieu of filing answers, HSRE and MOB both moved under Rule 4:6-2(e) to dismiss the complaint for failure to state a claim, arguing they were not parties to the lease and had no legal duty to make rent payments to plaintiffs. The trial court granted both motions with prejudice.

Following discovery, plaintiffs moved for summary judgment against SCF, and SCF cross-moved for summary judgment, arguing they had no obligation to continue making rent payments under the lease based on a lack of consideration. Both motions were denied because the court determined there was a genuine dispute of material fact regarding SCF's obligations to pay rent. Plaintiffs' claims against SCF thus went to a bench trial, with the parties' stipulating to certain facts.

After a one-day trial, in which only John A. Parmigiani testified, the trial court entered final judgment dismissing all claims against SCF, as well as HSRE and MOB, based on its oral decision that the lease became invalid once SCF transferred Southgate Corporate Center. The court was unpersuaded by the testimony of plaintiff John A. Parmigiani, a lawyer and the Parmigianis' son who assisted his father in the lease transaction after agreement could not be reached

7

regarding the sale of the land.  According to John, SCF should remain obligated to make rent payments despite transferring the property because it received a benefit "at the time [it] obtained [Southgate Corporate Center]," as well as the road dedication and its use that made the development possible.  John also testified that SCF "bought [Southgate Corporate Center] knowing that [the lease] agreement existed.  [SCF] signed that assignment knowing that was part of the deal."

Plaintiffs appealed the orders granting Rule 4:6-2(e) dismissal of their claims against HSRE and MOB, denying summary judgment against SCF, and dismissing claims against SCF following trial.

II

Plaintiffs argue the trial court improperly granted the motions to dismiss against HSRE and MOB.  They contend their complaint alleges a viable breach of contract claim against HSRE and MOB because the entities are intended beneficiaries of the lease despite their acquisition of Southgate Corporate Center in 2018 and 2021, respectively, well after the lease was entered into in 1977.  Without the lease establishing the creation of the two access roads, plaintiffs assert, Southgate Corporate Center could not have been built leading to HSRE and MOB's benefit.  Thus, plaintiffs maintain HSRE and MOB "should not be

permitted to escape paying [rental] compensation for that [benefit]." Plaintiffs stress that because HRSE "acknowledged their responsibility under the [l]ease by making rental payments when they initially acquired the Southgate Corporate Center," their payments "presented a factual issue that cannot be dismissed summarily."

As to their unjust enrichment claims, plaintiffs acknowledge the trial court's finding that the roads are public and no one has to pay to use them, but argue this ignores that the dedication of the roads was "essential" to developing Southgate Corporate Center, without which it "would not be a viable commercial property with the investment value achieved by the subsequent owners upon their purchase and sale of the properties." Plaintiffs further maintain the trial court erred by not allowing discovery of "the subsequent owners' knowledge of the [l]ease transaction . . . and the parties' intentions as to the beneficiaries of this transaction."

Based on our de novo Rule 4:6-2(e) analysis, Flinn v. Amboy Nat'l Bank, 436 N.J. Super. 274, 287 (App. Div. 2014), consistent with the standard detailed in Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989), we conclude plaintiffs' complaint sufficiently pled colorable claims of unjust

enrichment against HRSE and MOB.  However, we conclude that is not the case for plaintiffs' claims of breach of contract and covenant of good faith.

In "examining the legal sufficiency of the facts alleged on the face of the complaint," ibid. (citing Rieder v. Dept. of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)), and extending to plaintiff all favorable inferences, see Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 626 (1995) (citation omitted), we agree with the trial court that there is no basis for the breach of contract claims against either HSRE or MOB.  Neither entity was a party to the lease nor assumed the lease in a recordable instrument for a valid assignment as set forth in Section 9.01.  The last assignment of the lease was to SCF, owner of Southgate Corporate Center before HSRE and MOB's acquisitions.

Plaintiffs' argument that a breach of contract claim was established because HSRE "assumed" the lease obligations by remitting two rental payments fails given that the lease's plain language requires a recordable instrument containing a covenant of assumption.  The "liability to the landlord of an assignee of a lease who assumes its burdens is based upon the contract of assumption," as the "mere acceptance of an assignment is not an assumption." Packard-Bamberger & Co. v. Maloof, 89 N.J. Super. 128, 130 (App. Div. 1965). We agree with the trial court that because HSRE was not an assignee and there

is no written, recordable instrument in which they agreed to assume the lease burdens, HSRE did not enter into a contract with plaintiffs, thereby justifying dismissal of their breach of contract claims with prejudice.

Plaintiffs' theory of third-party liability to establish a contract claim also fails. Third-party beneficiaries may only sue on a contract made for their benefit if it is shown the contracting parties intended for them to receive a benefit. Reider Cmtys. v. N. Brunswick, 227 N.J. Super. 214, 221-222 (App. Div. 1988). A third party who fails to make such a showing has no cause of action, despite any incidental benefit derived from the contract. Id. at 222. Crucially, third-party beneficiary status confers a right to performance in the third party, see, e.g., Broadway Maint. Corp. v. Rutgers, 90 N.J. 253, 259-61 (1982), it does not allow for a party to the contract to enforce terms against a non-party. Here, neither the lease nor SCF's Assignment and Assumption Agreement with plaintiffs indicate they intended for HSRE or MOB to receive a benefit. Moreover, assuming HSRE or MOB have third-party beneficiary status, that would confer to them a right to sue on the contract, not a right of the parties to enforce obligations against them. Reider Cmtys., 227 N.J. Super. at 221-22.

Plaintiffs' covenant of good faith and fair dealing claims against HSRE and MOB likewise fail because there was no contract between the parties. As

11

we have had held, there is no implied covenant of good faith and fair dealing where an implied contract does not exist. Wade v. Kessler Inst. 172 N.J. 327, 344-45 (2002). Thus, we agree with the trial court's determination that plaintiffs' covenant of good faith and fair dealing claims should be dismissed with prejudice.

Turning to the trial court's dismissal with prejudice of plaintiffs' unjust enrichment claims, we disagree. "To prove a claim for unjust enrichment, a party must demonstrate that the opposing party 'received a benefit and that retention of that benefit without payment would be unjust.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 288 (2016) (citation omitted). The doctrine requires plaintiffs to show they "expected remuneration from the defendant at the time [they] performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant." Ibid. (internal quotations and citations omitted).

Plaintiffs did not have to establish they had a contractual relationship with HSRE and MOB for HSRE and MOB to obtain the benefit of the lease that requires paying rent for that benefit. We disagree with the trial court that plaintiffs have no unjust enrichment claims for the loss of rental payments from HSRE and MOB's use of public roadways. The lease agreement between the

Parmigianis and Billing which created the roads to allow for public thoroughfares under the control and maintenance of Morris Township was essential to the development of Southgate Corporate Center, which HSRE and MOB later acquired. HSRE and MOB cite no law which prohibits such arrangement. Indeed, HSRE, SCF, and the prior owners of Southgate Corporate Center paid rent for the use of the access roads with no assertion that rent was not permissible because the roads were owned and maintained by Morris Township. Accepting the allegations of plaintiffs' complaint as true, HSRE and MOB benefited from the lease by purchasing a viable commercial property with access from a major highway. Plaintiffs' unjust enrichment claims against HSRE and MOB should not have been dismissed under Rule 4:6-2(e). These claims should be subject to discovery,[1] pretrial motions, and, if appropriate, trial.

III

Plaintiffs argue the trial court erred in denying their summary judgment motion against SCF by refusing to recognize there were no material facts in dispute and granting judgment in their favor as a matter of law. We disagree.

---

[1] Discovery may also lead to viable allegations of claims by plaintiffs other than unjust enrichment, including contract claims.

A-3029-23

Our review of the trial court's summary judgment order is de novo, DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024), applying the same standard as the court, Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 124-25 (2023). Applying summary judgment guidelines under Rule 4:46-2(c), the court properly recognized that there were material facts in dispute as to how the original lease transaction was created. We agree with the court's finding that there was a question of the "benefit [SCF] [is] getting" under the lease.

IV

Lastly, we address the trial court's judgment in favor of SCF dismissing plaintiffs' complaint. The court determined that a hypothetical entity could buy Southgate Corporate Center with no regard to or knowledge of the lease because they would have the right to use the roads given their conveyance to Morris Township for public use. The court reasoned that the consideration contemplated by the original parties to the lease did not "devolve[] into consideration to [SCF]," thus forcing SCF to continue paying rent after it conveyed the property and received nothing in return is "entirely inequitable." The court thus found SCF did not have a contract with plaintiffs because SCF received no consideration and its contractual obligation to pay rent for use of

14

the roads ended when it sold the property. The court therefore dismissed plaintiffs' claim that SCF breached a covenant of good faith and fair dealing. The court added that if the lease obligations were linked to SCF's sale of Southgate Corporate Center, plaintiffs would have had a valid contract with HSRE and, thus, could collect rent from HSRE.

Plaintiffs argue the trial court is mistaken. They contend a contract still exists with SCF based on "the economic and practical reality of the transaction between . . . Billing, the [p]laintiffs' predecessors and the Township of Morris." Plaintiffs emphasize consideration derives from the "following elements of value under the [l]ease" and assignment: (1) plaintiffs suffered a detriment by agreeing to dedicate their property for the benefit of the development and stipulating they would not develop the remainder of the property; (2) SCF and its predecessors obtained benefits of development and access; (3) the benefits and burdens have "continued through subsequent ownership"; (4) SCF "acknowledged the benefits and burdens of the [l]ease and reaffirmed the [t]enant's obligations"; and (5) SCF's assumption of the lease was supported by valuable consideration, namely access to the property it acquired as "the obligations undertaken by SCF were part of the purchase price that SCF paid for the building in a sophisticated transaction."

Even though the lease was not recorded against the Southgate Corporate Center, plaintiffs, citing Siligato v. State, 268 N.J. Super. 21, 28 (App. Div. 1993) (holding an unrecorded deed is perfectly efficacious in passing title from grantor to grantee, subject to potential divestment by subsequent bona fide grantee without notice), assert it "does not negate the effectiveness of the [l]ease against parties with actual notice of the [l]ease obligations." Plaintiffs recognize "no purchaser of the [Southgate Corporate Center] was compelled to assume the obligations of the [l]ease," but the "only way that the selling owner could release its liability was to require the purchaser to assume the lease obligation." Plaintiffs argue SCF cannot unilaterally void its lease obligations by not requiring assumption of the lease when it sold the Southgate Corporate Center to HSRE.

As for their covenant of good faith and fair dealing claim against SCF, plaintiffs assert that because SCF was bound by the lease, it breached an implied covenant. Plaintiffs maintain "SCF's refusal to pay rent has denied [p]laintiffs 'the fruits' of the [l]ease."

We are persuaded by plaintiffs' arguments that the trial court should have granted judgment in its favor because they had a contract with SCF, which SCF breached, and violated a covenant of good faith and fair dealing. We disagree

16

with the court that SCF did not receive consideration, thereby negating the creation of a contract.

A contract exists where there is a flow of consideration, meaning both sides receive something from the deal. Cont'l Bank of Pa. v. Barclay Riding Acad., 93 N.J. 153, 170 (1983). Consideration may be either a detriment incurred by the promisee or a benefit received by the promisor, and "may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation." Sipko v. Koger, 214 N.J. 364, 380 (2013) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 87 (2002)). The presence of consideration does not depend upon the comparative value being exchanged, the consideration "must merely be valuable in the sense that it is something that is bargained for in fact." Seaview Orthopedics ex rel. Fleming v. Nat'l Healthcare Res., Inc., 366 N.J. Super. 501, 509 (App. Div. 2004) (quoting Borbely v. Nationwide Mut. Ins. Co., 547 F. Supp. 959, 980 (D.N.J. 1981)).

We conclude a contract existed between SCF and plaintiffs. SCF, as successor in interest of Billing's lease with the Parmigianis, plaintiffs' predecessor in interest, received the benefit of the two access roads, which were essential for the development of Southgate Corporate Center. Even though the roads became public thoroughfares, SCF signed the Assignment and

17

Assumption agreement with Mass Mutual when it bought Southgate Corporate Center in 2008, obligating it to make rent payments—which it did. SCF was fully aware the rent payments for the road were consideration for Parmigiani to not develop the property where the roads were situated. SCF breached its covenant of good faith and fair dealing when it chose not to require HSRE to assume the lease as Mass Mutual required of it. SCF cannot hide from its rent payment obligations by selling Southgate Corporate Center and not having HSRE continue to make payments. In fact, as noted, HSRE made two separate rent payments under the lease of $17,546.04 and $26,250.00, but for reasons that are unclear in the record[2] decided not to make any more payments thereafter. The failure of SCF and HSRE to enter into a written Assignment and Assumption agreement that was recordable does not shield SCF from its obligations to make rent payments nor act in good faith and deal fairly. Based on our conclusion that judgment should be entered in favor of plaintiffs against SCF on their breach of contract and covenant of good faith and fair dealing claims, we remand to the trial court to determine damages.

---

[2] Considering HSRE was dismissed when the trial court granted its Rule 4:6-2(e) motion to dismiss, there was no discovery into why payments were stopped.

We leave it to the trial court's broad case management discretion to determine how plaintiffs' claims against the three defendants shall proceed. <u>See</u> <u>Lech v. State Farm Ins. Co.</u>, 335 N.J. Super. 254, 260 (App. Div. 2000); <u>see also</u> <u>R.</u> 4:38-2.

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3029-23